UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DANIEL DAVIS, individually and on behalf of himself and all others similarly situated, | ) ) ) | No. 5:18-CV-142-REW |
| | ) | |
| Plaintiff, | ) | OPINION & ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| OMNICARE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Daniel Davis (Plaintiff) initiated this putative collective action against Defendant Omnicare, Inc. and three of its subsidiary pharmacies[1] (together "Defendants" or "Omnicare") on behalf of himself and other Act Fast Delivery (Act Fast) workers. DE 1 (Complaint). Plaintiff claims violations of state and federal wage laws[2] as well as unjust enrichment. *Id.* at 11–12. Davis alleges Defendants—despite contracting with a third-party (Act Fast) for delivery services and nominally classifying Plaintiffs (or Act Fast) as independent contractors—jointly employed (as defined by statute) Plaintiffs as delivery drivers for their medical products. *Id.* at 6–7. Plaintiff pursues recovery for unpaid wages, unlawful deductions, and unreimbursed expenses. *Id.* at 11–13.

---

[1] Omnicare does not directly own Defendants Home Care Pharmacy, LLC, D&R Pharmaceutical Services, LLC, or Three Forks Apothecary, LLC. *See* DE 11-1, at 5 n.1. Rather, Omnicare wholly owns three subsidiaries that, themselves, exclusively own the other named Defendants. *Id.* Omnicare now is itself a wholly owned subsidiary of CVS Pharmacy, Inc. *Id.*
[2] Specifically, Plaintiff alleges violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, and its Kentucky counterpart KRS 337.010, *et seq.*

The Court, finding that the pleadings framed plausible claims for relief, previously denied Defendants' Rule 12(c) motion. DE 23 (Op. & Order). Per the Court's schedule, DE 44, Plaintiff now pursues conditional certification of an FLSA collective and seeks authorization of notice to potential members. *See* DE 51 (Motion). Plaintiff's motion—fully briefed, *see* DE 55 (Response), DE 56 (Reply), DE 60-2 & 60-3 (Surreply and Exhibit)[3]—stands ripe for review.

## I.     BACKGROUND

The Court, applying the Plaintiff-favorable, Rule 12 standard, previously outlined the relevant factual backdrop:

> In 2012, the named Omnicare subsidiaries, and others, contracted with Act Fast Delivery (Act Fast) for "Courier Services," to wit "delivery of high intrinsic value pharmaceuticals, including controlled substances and other drugs[.]" DE 4-2, at 2 (2012 Agreement). In 2017, CVS Pharmacy, Inc., individually "and on behalf of its subsidiaries and affiliates, including Omnicare,"[6] executed a substantially similar agreement for Act Fast's delivery services. DE 4-1 (2017 Agreement).[7]
>
> > [FN 6: All named Defendants are in the chain of CVS subsidiaries. *See supra* note 1.]
> > [FN 7: The Court refers to the 2012 and 2017 Agreements collectively as the "Courier Agreements."]
>
> From 2014 through 2017, Plaintiff, nominally an Act Fast driver, delivered Omnicare products from Omnicare facilities to Omnicare customers on an Omnicare-set schedule via Omnicare-mandated routes using Omnicare gear. DE 1, at ¶¶ 21, 30. Defendants also required Davis to be on call during regularly scheduled periods to make Defendant-directed "stat runs, which are individual deliveries . . . on an expedited, emergency, and ad hoc basis." *Id.* at ¶ 26. Act Fast's Courier Services provided an integral link between Defendants' supply of delivery-only products and demand from nursing homes and other medical facilities. *Id.* at ¶ 15. Per Plaintiff, Omnicare is Act Fast's largest, indeed its sustaining customer. *Id.* at ¶¶ 19, 32(c). Plaintiff alleges that Defendants, through the Courier Agreements and in practice, maintained sufficient control over Act Fast employees such that Defendants (along with Act Fast) jointly employed him under state and federal wage law.

---

[3] Per the DE 89 ruling, the Court, for current purposes, considers the substance of only Sections III & IV of DE 60-2.

Davis claims the flat fees he received for deliveries effectively were below minimum wage and failed to compensate him for overtime. He alleges further impermissible wage deductions and omitted reimbursements. DE 1, at ¶ 39. Though Davis claims Act Fast directly underpaid him, he contends that Act Fast acted for Defendants' benefit and on their behalf. *Id.* at ¶ 32(b). Plaintiff alleges that Defendants, as his joint employers, are jointly and severally liable for all underpayments. *Id.* at 7. Specifically, Davis seeks: unpaid minimum wages, unpaid overtime, unreimbursed vehicle costs, unlawful deductions, unlawful expenses, and unpaid payroll deductions under 29 U.S.C. § 216 and KRS 337.385, DE 1, at ¶¶ 49–51 (Count I), and, alternatively, unpaid payroll deductions under KRS 337.060, DE 1, at ¶¶ 52–53 (Count II). Davis also seeks restitution to the extent Defendants, through underpayment, were unjustly enriched by improperly shifting costs and expenses to Plaintiff. DE 1, at ¶¶ 54–55 (Count III).

DE 23 at 2–3. Davis pleaded that his FLSA[4] claims "are typical of the [proposed] class members[,]" in that Plaintiff "was subject to the same common scheme regarding underpayment, failure to reimburse kickbacks, Unlawful Deductions, Unlawful Expenses and lack of Required Deductions as the members of the class." DE 1 at ¶ 44. Davis, here, seeks conditional certification of a collective defined as:

> All current and former delivery drivers and dispatchers classified as independent contractors who performed work for Defendants and were based at a distribution center located in Ashland, Beattyville or Lexington, Kentucky during the three-year period before the filing of the Complaint up to the date the Court authorizes notice.

DE 51-1 at 5. In support, Plaintiff attaches his own affidavit (DE 51-2), as well as affidavits of former Act Fast Dispatcher Brian Alberts (DE 51-3), and former Act Fast Drivers William Eckler (DE 51-4) and Edna K. Narragon (DE 51-5).[5] Generally, the DE 51-affidavit suite coincides with and lends support to Davis's pleaded allegations.

## II.   CLASS CERTIFICATION STANDARD

The Sixth Circuit outlines the applicable, bifurcated certification framework:

---

[4] To be clear, Davis has not moved for and the Court does not here address any class or collective treatment of his Kentucky wage and unjust enrichment claims. Plaintiff may move for such relief on or before the applicable deadline. *See* DE 44 at ¶ 3 (setting November 18, 2019, deadline); DE 91 at ¶ 2 (extending deadline to January 27, 2020).

[5] Hereinafter, "Davis Aff., Alberts Aff., Eckler Aff., and Naragon Aff."

Section 216(b) of the FLSA allows similarly situated employees to recover compensation from their employer in "opt-in" class action litigation. 29 U.S.C. § 216(b). *See also Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). District courts determine whether plaintiffs are similarly situated in a two-step process, the first at the beginning of discovery and the second after all class plaintiffs have decided whether to opt-in and discovery has concluded. *Comer*, 454 F.3d at 546. District courts use a "fairly lenient standard" that "typically results in conditional certification of a representative class" when determining whether plaintiffs are similarly situated during the first stage of the class certification process. *Id.* at 547 (citation and internal quotation marks omitted). . . .

At the second stage of the class certification process, district courts apply a "stricter standard" and more closely examine "the question of whether particular members of the class are, in fact, similarly situated." *Id.* Lead plaintiffs "bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." [*O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).]

*White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). Davis, here, seeks only notice-stage certification. This "conditional and by no means final" certification requires only a "modest factual showing" that the plaintiff's position is "similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–57 (citations omitted). To be sure, Defendants strenuously advocate for a more demanding standard. *See* DE 55 at 6–7. Defendants point the Court to various district court decisions that have, on the facts and postures presented in those cases, set a "higher standard of proof" or applied a "more exacting review[.]" *See id.* at 7 (collecting cases). This Court, for several reasons, finds the Sixth Circuit's published endorsement of the lenient notice-stage standard controlling.

First, Defendants cite to no Circuit precedent approving a modified or "modest plus" rubric. Second, as the Court of Appeals often explains:

"Congress passed the FLSA with broad remedial intent" to address "unfair method[s] of competition in commerce" that cause "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Keller v. Miri Microsystems LLC*, 781 F.3d

799, 806 (6th Cir. 2015); 29 U.S.C. § 202(a). The provisions of the statute are "remedial and humanitarian in purpose," and "must not be interpreted or applied in a narrow, grudging manner." *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002)[.]

*Monroe v. FTS USA, LLC*, 860 F.3d 389, 396–97 (6th Cir. 2017) (explaining that "Courts typically bifurcate certification" and that "a more exacting standard" is appropriate "[o]nce discovery has concluded"), *cert. denied*, 138 S. Ct. 980 (2018). The tolerant *Comer* standard is teleologically consistent with the FLSA and the specific <u>notice</u>[6] goal of initial certification. Third, the heightened burden at the second stage renders fleeting any minimal prejudice arising from an initial certification of a class that a court, under more stringent latterly review, finds dissimilarly situated.[7] *See Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012) (discussing "stricter standard" applicable to final certification). The Court, at this stage, thus opts for the Circuit-sanctioned route and applies the "fairly lenient standard" that "typically results in conditional certification[.]" *Comer*, 454 F.3d at 546; *see also Given v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2018 WL 925996, at *2 (M.D. Pa. Feb. 16, 2018) (finding "application of a higher step-one burden . . . inappropriate"); *Freeman v. MedStar Health Inc.*, 187 F. Supp. 3d 19, 29 (D.D.C. 2016) (finding no basis for heightened standard "in the text of the FLSA or in the related precedent); *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 766 (N.D. Ohio 2015) (rejecting "'modest plus' standard of review").

---

[6] In contrast to a Rule 23(b)(1) or (b)(2) class action, for which participation, absent opt-out, is presumed for individuals within the defined class, the FLSA requires putative plaintiffs to opt-in to the proposed collective. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[7] The Court notes that Defendants' proposed regime imports numerous uncertainties into the traditional bipartite certification framework. Relevant questions might include: How much discovery is sufficient to elevate the initial bar? Precisely how much more "exacting" should the intermediate review be? [Surely, absent full discovery, Plaintiff cannot be put to a Rule 56 style burden.] The Court sees too much incertitude, and little attendant benefit, in Defendants' approach.

Accordingly, to justify initial certification, Davis had to offer a "modest factual showing" that "his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 547 (citation and quotation marks omitted).

## III. CERTIFICATION

### A. Generally

The FLSA does not explicitly define "similarly situated." 29 U.S.C. § 216(b). Textually and logically, the relevant similitude for proposed collective members must be with respect to "liability prescribed in the" FLSA. *Id.* That is, Davis and the putative class members need be "similarly situated" with regard to federal wage claims against Defendants. As a baseline, then, the Court begins with Plaintiff's FLSA claims, *i.e.*, how Davis is, as to Defendants' alleged FLSA liability, "situated." The crux of Plaintiff's theory is that "Defendants misclassified [Act Fast] Drivers as independent contractors as [ ] part of a fraudulent scheme to avoid their wage payment obligations[.]" DE 1 at ¶ 29. Per the complaint, Davis claims, as "typical of the class members[,]" that Defendants' "standard Driver payment policy" led to "systemic underpayment" as well as "failure to reimburse kickbacks, Unlawful Deductions, Unlawful Expenses and lack of Required Deductions[.]" *See id.* at ¶¶ 41–44. Plaintiff, by affidavit, avers, in relevant part, that he: (1) was "incorrectly classified as an independent contractor," (2) "did not receive overtime pay" when "required to work . . . more than" 40 hours per week; (3) "was required to use [his] personal vehicle in making deliveries" and "had to pay for gas and all other expenses" related to using his personal vehicle; (4) "was paid a [non-negotiable] flat fee per route"; and (5) "in some weeks . . . did not receive the minimum wage . . . , especially considering" the unreimbursed gas and vehicle expenses. Davis Aff. at 2–3.

As to the proposed class, Davis generally reports, via hearsay,[8] that other drivers were: (A) "classified as independent contractors"; (B) "did not receive any overtime pay" for weekly hours worked over 40; (C) "not reimbursed for any of their expenses in driving their personal vehicles to make deliveries"; (D) and "paid in the same manner" as Davis. *Id.* The sworn statements of three other former Act Fast workers uniformly support Davis's contentions as to underpayment.[9] All of the affiants allege that Omnicare exercised significant control over Act Fast Drivers' day-to-day conduct.[10]

Plaintiff, here, needed a modest showing of similarity, not conclusive proof of identity. The Court finds that Davis, under the applicable lenient standard, has shown sufficient similarity between himself and other Act Fast Drivers to justify certification of *some* collective. However, the Court also finds Davis's proposed scope overbroad. Thus, the Court grants initial certification, with limitations.

## Dispatchers

Plaintiff has not shown that former Act Fast dispatchers are, with respect to the pending FLSA claims, similarly situated. Davis's pleaded collective claims exhibit a near complete focus on alleged underpayment of Drivers, not dispatchers. *See, e.g.*, DE 1 at ¶ 42 ("Defendants' standard Driver payment policy"). Indeed, the pleading defines "Plaintiffs and members of the putative

---

[8]     "[T]he majority of courts within the Sixth Circuit 'have held that plaintiff's evidence on a motion for conditional certification need not meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of litigation would defeat the purpose of the two-stage analysis under Section 216(b).' *Waggoner*, 110 F. Supp. 3d at 770 n.6 (conditionally certifying a collective action even though plaintiffs' "generalized statements about the job duties" of potential opt-in plaintiffs and conversations described "in the broadest of terms" were "quite thin").
*Williams v. King Bee Delivery, LLC*, No. 5:15-CV-306-JMH, 2017 WL 987452, at *4 (E.D. Ky. Mar. 14, 2017).

[9] *See, e.g.*, Alberts Aff. at ¶¶ 3–4, 8; Eckler Aff. at ¶¶ 4–7, 12–13; Narragon Aff. at ¶¶ 4–7, 11–12.

[10] *See, e.g.*, Alberts Aff. at ¶¶ 3–4; Eckler Aff. at ¶¶ 9–12; Narragon Aff. at ¶¶ 9–11.

class" as, "collectively, **Drivers**[.]" *Id.* at ¶ 22 (emphasis added). Further and foundationally, for this wage case, Davis contends that Drivers were paid on a different basis than dispatchers, *i.e.*, per route versus per hour. *Compare* DE 51-1 at 10 ¶ 3 ("Dispatchers were paid on a per hour basis."), *with* DE 1 at ¶ 41 (alleging as a "common question[ ] of law and fact to the class" that "Drivers were paid different amounts for different routes," but "all such routes underpaid each Driver as a result of [Defendants'] common scheme."), *and Heibel v. U.S. Bank Nat. Ass'n*, No. 2:11-CV-00593, 2012 WL 4463771, at *5 (S.D. Ohio Sept. 27, 2012) (conditionally certified collective members "performed the same basic duties and were compensated in the same manner").

Additionally, Plaintiff's claims turn on the theory that Defendants exercised such "control" over Drivers' day-to-day work that Omnicare was, as a statutory matter and with Act Fast, the Drivers' joint employers. *See, e.g.*, DE 1 at ¶¶ 1, 21, 30, 32. The complaint allegations as to such control over dispatchers are thin to non-existent. Also, a significant component of Plaintiff's case theory concerns Defendants' alleged failure to reimburse expenses related to personal vehicle use. *Id.* at ¶ 41 (claiming a "common scheme of systematic underpayment and lack of reimbursement of kickbacks"). The Court sees no such claim as to dispatchers. *See generally* Alberts Aff. Finally, Plaintiff's own "Consent to Opt In" shows Davis's agreement to pursue FLSA claims in this action for "work performed while employed" only "as a delivery driver[.]" DE 42-1 at 1.[11] Davis, despite

---

[11] Arguably, Davis thus has not, at least not yet, even commenced any FLSA collective action for dispatcher services. *See* 29 U.S.C. § 256.

the lenient standard, fails to show that Act Fast dispatchers were "similarly situated" in too many critical respects.[12]

In short, Plaintiff, from complaint filing to date, has principally pegged the collective claims to Defendants' alleged control over and underpayment of Act Fast <u>Drivers</u>. *See, e.g.*, DE 51-1 at 10 ¶ 2 ("piecemeal nature of the work"); *id.* ("had to pay for gas and all expenses . . . in making deliveries"); *id.* at 11 ¶ 9 ("failed to pay . . . Class Members for mandated waiting time before, between, and after assigned deliveries"). Davis's references to his dispatching role appear as afterthoughts and, more importantly, stand unlinked to a developed theory of liability for dispatch work. *See, e.g.*, DE ¶ 2 ("Davis *also* dispatched drivers[.]" (emphasis added)). As to any dispatcher-based FLSA claims, the Court finds Davis's similarity showing insufficient and excludes that sub-category from the initially certified collective.

*Temporal Limit*

Additionally, Plaintiff has not shown that Act Fast Drivers who received their last Act Fast paycheck more than 3 years before this Order and who have not yet filed a written opt-in consent are similarly situated. Plaintiff proposes inclusion of Drivers employed "during the three-year period before the filing of the Complaint up to the date the Court authorizes notice." DE 51-1 at 5. Davis's proposal includes individuals that are distinct in one critical respect: any Driver that did not have an Act Fast "regular payday" within 3 years of this Order, and that has not yet filed a

---

[12] Notably, though hardly determinative on this record, neither district court that conditionally certified an Act Fast-related FLSA collective included dispatchers. *See Young v. Act Fast Delivery of W. Virginia, Inc.*, No. 5:16-CV-09788, 2017 WL 3445562, at *2 (S.D. W. Va. Aug. 10, 2017); *Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663, at *3 (D. Colo. June 25, 2015); *see also Young*, 2017 WL 3445562, at *1 ("Young alleges . . . that he was employed as a dispatcher and delivery driver[.]").

written consent, has no viable FLSA claim. *Hughes v. Region VII Area Agency on Aging,* 542 F.3d 169, 187 (6th Cir. 2008).[13]

Per the Circuit,

An FLSA plaintiff generally has two years to file suit, but the statute of limitations increases to three years if the claim consists of a "willful violation." 29 U.S.C. § 255(a) . . . . An FLSA cause of action accrues "at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Hughes,* 542 F.3d at 187 (citations omitted). To bring a collective FLSA action, a plaintiff must file a written consent to opt-in to the collective action. 29 U.S.C. § 216(b) (allowing an aggrieved employee to bring a collective FLSA action against the employer, provided that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"), *abrogated on other grounds by Alden v. Maine,* 527 U.S. 706, 759–60, 119 S. Ct. 2240, 144 L.Ed.2d 636 (1999).

*Frye*, 495 F. App'x at 675–76. For limitations purposes, filing a written consent "commences" an FLSA collective action claim. *See* 29 U.S.C. § 256. Davis pleaded that he worked as an Act Fast Driver until October 2017. *See* DE 1 at ¶ 2. Given the attendant accrual date, Davis had until roughly October 2020 to file his "opt-in" form, and thus "commence" his § 216(b) claim. Plaintiff has, at least on the current record, *see* DE 42-1 (May 17, 2019, Opt-In Form), timely commenced a collective action claim. Accordingly, a former Act Fast Driver with only time-barred claims is not, with respect to "liability prescribed in the" FLSA, similarly situated to Davis. 29 U.S.C. § 216(b).

---

[13] In truth, any Driver that **fails to opt-in** within 3 years of a last Act Fast paycheck will likely have no viable claim. The Court pins the date to this Order's entry, rather than the uncertain date of opt-in filing, as a firm cut-off date for individuals who are, given the limitations period, surely dissimilarly situated. Additionally, for purposes of notice clarity, the Court, in defining the class, omits reference to any caveat regarding pre-certification opt-in filing. Clearly, any former Driver who has filed an opt-in, *see, e.g.*, DE 49, does not need notice of this suit. Thus, any former Driver who receives notice will not be subject to the exception. To be clear, however, the Court's certification includes Drivers who have opted-in within 3-years of their last Act Fast paycheck (and otherwise fall within the defined collective).

Consequently, the Court limits certification to those former Drivers that have potentially timely claims, *i.e.*, Act Fast Drivers that received their last paycheck on or after December 3, 2016. *See Williams*, 2017 WL 987452, at *6 (limiting notice authorization to account for limitations period); *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *3 (S.D. Ohio Feb. 26, 2015) (limiting proposed class to "employees who worked for [Defendant] three years prior to the date of this Decision").[14] This limitation ensures that the certified class is limited to similarly situated former Drivers and that notice is not sent to individuals lacking a viable claim.[15]

## B. Defendants' Other Contentions

At this *conditional* certification stage, courts typically decline to "consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2019 WL 5257051, at *1 (N.D. Ohio Oct. 17, 2019) (quoting *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)). When, as here, a plaintiff offers a modest showing that the proposed collective's claims are "unified by common theories of defendants' statutory violations," the fact that the "proofs of [such] theories are inevitably individualized and distinct" presents no obstacle to initial certification. *Monroe v. FTS USA, LLC*, 860 F.3d at 398 (quoting *O'Brien*, 575 F.3d at 584–85). Nor does "the prospect of individual defenses . . . defeat authorization of a collective action." *Crawford v.*

---

[14] Defendants proposed this limit, *see* DE 55 at 16–17, and Plaintiff did not materially address the restriction.

[15] On the other hand, the Court sees no need to limit the class based on Defendants' termination of its relationship with Act Fast. *See* DE 55 at 17. Of course, any Act Fast Driver employed only after Defendants ended a relationship with Act Fast would likely not be similarly situated to Davis for purposes of the pending claims. However, given that Act Fast of Kentucky did not stay in business after such termination, the Court sees no demonstrable risk that the initially certified class would reach any member of this evidently non-existent group. *See* DE 55-2 at 8 (Brumagen Dep. at 163).

*Lexington-Fayette Urban Cty. Gov't*, No. 5:06-CV-299-JBC, 2007 WL 293865, at *7 (E.D. Ky. Jan. 26, 2007) (citation and quotation marks omitted). The majority of Defendants' arguments against certification "are of the sort that are appropriate for consideration during the second-stage, and not during the initial 'notice' stage." *Id.*[16] Thus, the Court, for now, declines any limitations of the proposed collective based on such challenges.[17]

Further, the Court, for the reasons addressed below, finds no basis to circumscribe the initially certified class based on Defendants' contentions regarding affidavit content, intra-collective conflict, or Beattyville-Driver inclusion.

### Affidavit Content

The defense contends that "Plaintiff and Opt-ins consistently use the passive voice in their affidavits, to avoid acknowledging to the Court that the overwhelming majority of actions they

---

[16] The same contentions are also inconsistent with District authority. *Compare* DE 55 at 9 (claiming that individuals who did not work 40 hours "could not possibly have any overtime claim"), *id.* ("wide variation in the expenses incurred by individual Act Fast drivers"), *id.* at 10 ("variations in the manner in which various Act Fast drivers and dispatchers interacted with Defendants"), *and id.* at 17 (arguing "some [collective] members worked for Act Fast customers other than Defendants"), *with Williams*, 2017 WL 987452, at *6 (declining to set a forty-hours worked limit on collective and finding that "defining the Notice Group in such a way could confuse potential opt-in plaintiffs and deter them from participating in this action"), *Rogers v. Webstaurant, Inc.*, No. 4:18-CV-00074-JHM, 2018 WL 4620977, at *4 (W.D. Ky. Sept. 26, 2018) (finding the defense's argument that 'the claims could only be resolved by conducting individualized fact-intensive trials to reconstruct each employee or former employee's work history and compensation' . . . more appropriately raised at the second stage, 'after all of the opt-in forms have been received and discovery has concluded.'" (quoting *Comer*, 454 F.3d at 546)), *and Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 WL 5725631, at *4 (N.D. Ohio June 9, 2008) ("Plaintiff's performance of a significant amount of . . . jobs [for non-defendants] during his employment with the company, . . . is not sufficient to preclude conditional certification.").

[17] Defendants, citing *Carrier Corp. v. N.L.R.B.*, 768 F.2d 778, 781 n.1 (6th Cir. 1985), argue that disparities within the proposed collective concerning factors related to the joint employer inquiry counsel against certification. DE 55 at 10. However, the *Carrier* Court did not address certification issues. 768 F.2d at 781 n.1 ("[T]he only question before this Court is whether in this particular case there is substantial evidence to support the Board's finding that Carrier was a joint employer."). And, the fact that the joint employer inquiry may be "inevitably individualized" has no bearing on the initial certification inquiry. *Monroe*, 860 F.3d at 398 (citation omitted).

cite were undertaken, if at all, by Act Fast, not Defendants." *See* DE 55 at 12. The Court sees no linguistic smokescreen. Plaintiff has never contested that Drivers were "nominally working for Act Fast" or that Act Fast directly "hire[d]" and (allegedly) "underpay[ed]" Drivers. *See* DE 1 at ¶¶ 21, 32(b). Rather, Davis's case theory is that Act Fast acted "on Omnicare's behalf[,]" and that Defendants significantly controlled, and, as a matter of economic reality, jointly employed Drivers. *Id.* at ¶¶ 30, 32. The subject affidavits mirror the pleaded contentions. *See, e.g.*, Davis Aff. at ¶ 11; Alberts Aff. at ¶ 3; Eckler Aff. at ¶ 10; Narragon Aff. at ¶ 10.[18] As much as the Court, stylistically, disdains the passive voice, it declines Defendants' invitation to import evidentiary or substantive weight into Plaintiff's (or the other opt-ins') affidavit authorship choices.

### Intra-collective Conflict

Defendants' claims regarding purported intra-collective conflicts are likewise unavailing. First, given the argument's reliance on what a "non-supervising employee must allege . . . to **prove**" a claim, notice-stage analysis is premature. DE 55 at 13 (quoting *Bentley v. Cty. of Los Angeles*, No. CV 09-02063-RGK(CWX), 2009 WL 10674394, at *3 (C.D. Cal. Sept. 15, 2009)) (emphasis added). Second, and contrary to Defendants' assumption, the Court is less than convinced that a "manager" like Chris Brumagen, that "worked as a driver" falls within the certified collective. DE 55 at 13–14. [To the extent Defendants contend any individual that, at any time, *acted* as a driver, notwithstanding a distinct official title, falls within the certified class of "delivery drivers," they do so at their own peril.] Finally, the defense's cited cases do not persuasively support, on this record, the claimed conflict. The "conflicts" that concerned the

---

[18] Defendants' claims regarding potential inconsistencies between Davis's affidavit and deposition testimony are premature. *Waggoner*, 110 F. Supp. 3d at 769 ("[T]he weight to be given to any declaration that is contradicted by subsequent deposition testimony is a matter best reserved for the second stage of the proceedings.").

Alabama and California District Courts were those that required proof that a class member "violated federal law" or engaged in "wrongdoing." *See, e.g.*, *Ellerd v. Cty. of Los Angeles*, No. CV 08-4289 CAS FFMX, 2009 WL 982077, at *5 (C.D. Cal. Apr. 9, 2009); *Grantham v. Agrium Advanced Techs. (U.S.) Inc.*, No 1:09-cv-01992-KOB, ECF No. 32 (Mem. Op. & Order) at 25 (N.D. Ala. Apr. 16, 2010).

This is a wage case. That is, Plaintiff, as to violations of federal law, alleges failures to pay statutory overtime and minimum wages. Defendants' conflict argument, however, relies on alleged facts a plaintiff might need to prove to establish that Omnicare or its subsidiaries "employed" the class members. *See, e.g.,* DE 55 at 15 (alleging "Brumagen and other members of the proposed collective are 'employers' under the FLSA"); *id.* ("Dispatchers, including Plaintiff Davis and Opt-in Alberts, made the assignments of stat runs"); *id.* at 16 (claiming Lead Drivers were "involved in" Driver recruitment, "created schedules[,]" and "directed dispatchers from time to time"). Yet, employing (as statutorily defined) a Driver is not, itself, a "violation of federal law" or "wrongdoing[.]" Rather, employer status triggers federal wage obligations. An employer's failure to pay its employee requisite wages is the misconduct predicate for Plaintiff's FLSA claims. None of Defendants' cited authority suggests that a certification barrier arises merely because a collective member may need to show that a co-plaintiff acted in some lawful way.[19] Again, the "similarly situated" inquiry centers on the alleged violation. Here, Plaintiff has adequately

---

[19] *See, e.g.*, *Bentley*, 2009 WL 10674394, at *3 ("[T]o prove their claims, Plaintiff and the other non-supervising . . . Officers would have to show that their Supervising Deputy Probation Officers **violated federal law**[.] . . . Both categories of probation officers appear to comprise the proposed class." (emphasis added)); *Ellerd*, 2009 WL 982077, at *5 ("In order to prove their claims, the social workers will have to show that their supervisors **violated federal law** and defendant's official policies by telling the social workers not to record their overtime. (emphasis added)); *Grantham*, ECF No. 32 at 25 (Plaintiff, a former lead operator, was "responsible for ensuring that employees [were] responsible for ensuring that employees [were] fully paid for all time worked.").

demonstrated a shared class theory that Defendants, through and with Act Fast, improperly designated them as independent contractors and denied them statutory minimum and overtime wages. The record includes no proof that any putative class member designated any other as an independent contractor or calculated and dispensed any Driver paychecks.

In short, Davis's claim is not that "exercising control" over Drivers is, alone, unlawful conduct; acts suggesting such control are the "allegations against other members of the collective" that Defendants contend "Plaintiff (and other potential opt-ins) must make . . . to prove their claims[.]" DE 55 at 16. The Court sees no intra-collective conflict to block certification on this (or any other) basis.

*Proper Locus*

Finally, Defendants allege that Davis failed "to provide any competent evidence supporting Beattyville drivers' inclusion in the collective." DE 60-2 at 8. The Court disagrees. Plaintiff tendered Affidavits from four former Act Fast employees indicating that contractor classifications, payment methodology, and employment circumstances were uniform (and, at least, similar) among Act Fast Drivers. Defendants' answer acknowledges that the omnibus Courier Agreements governed Act Fast's provision of Drivers for ferrying pharmaceuticals from Defendants' Lexington, Ashland, and Beattyville distribution centers. *See* DE 4 at ¶ 20. Most importantly, Act Fast's Kentucky Manager, Chris Brumagen, stated that Drivers' route pay was, whether at Lexington, Ashland, and Beattyville, "standard [and] . . . paid the same way"; indeed, per Brumagen, "it was one universal way . . . [for] everybody in Kentucky[.]" DE 56-1 at 9 (Brumagen Dep. at 66–67). Finally, Brumagen testified that all Kentucky Act Fast Drivers signed (mostly) identical "independent contractor agreements." Brumagen Dep. at 139–141.

Defendants' argument principally relies on the absence of Beattyville Driver affidavits. However, the defense's theory ignores the circumstantial weight of proof regarding uniformity and the lenient applicable standard. Plaintiff, as to Beattyville Drivers, has carried the light initial-certification burden. *See Williams*, 2017 WL 987452, at *6 (finding opt-in plaintiff's "declaration that he had conversations with Ohio and Indiana drivers, who reported similar working conditions and compensation schemes [and] . . . the Department of Labor's 2015 Report" suggesting uniform independent contractor designation and lack of overtime pay "supports the inference that the Defendants' labor practices affected drivers in all three states" and certifying class including "Ohio and Indiana drivers").

### C.      Certification Sub-Conclusion

For these reasons, the Court initially certifies, and provisionally authorizes notice to a collective comprised of:

> All current and former delivery drivers classified as independent contractors who performed work for Defendants and were based at a distribution center located in Ashland, Beattyville or Lexington, Kentucky, and who received their last paycheck on or after December 3, 2016.

Given the authorization and preliminary certification, "the Court must determine if the proposed notice is fair and accurate to properly inform prospective plaintiffs of the action." *Perez v. El Torazo Mexican Rest., Inc.*, No. 3:16-CV-00545-GNS, 2017 WL 6344624, at *3 (W.D. Ky. Dec. 12, 2017).

### IV.      NOTICE

> The FLSA "grant[s] the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible and not otherwise contrary to the statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-LaRoche v. Sperling*, [110 S. Ct. 482, 486] (1989) (discussing 29 U.S.C. § 216(b), the FLSA's enforcement provision, as incorporated into the ADEA). Thus, "district courts have discretion, in appropriate cases, to implement 29 U.S.C. 216(b) by facilitating notice to potential plaintiffs." *Id.* "Court

authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.*

*Williams*, 2017 WL 987452, at \*5. In its notice-facilitation role, the Court settles disputes regarding notice content, and "ensure[s] that it is timely, accurate, and informative." *Hoffmann-La Roche*, 110 S. Ct. at 487. Plaintiff proposes a notice plan. DE 51-1 at 12–13; *see also* DE 51-6 (Proposed Notice). Defendants raise multiple objections. *See* DE 55 at 19–25.[20] The Court finds as follows:

### a. Form

First—The notice must be harmonized with the Court's rulings as to proper collective scope. Thus, references to dispatchers should be stricken, a temporal limitation should be added (*e.g.*, to the heading, *see* DE 51-6 at 2) or modified (*e.g.*, in paragraph 1, *see id.*) as necessary and appropriate.

Second—The notice, to the extent inconsistent with the record, must be corrected. For instance, the record includes no proof that "Defendants' records show that" any prospective collective member is "in the class of workers defined above." DE 51-6 at 4. Likewise, Plaintiffs' representations regarding what "Defendants . . . state" are not reflective of the defense's case theory. DE 51-6 at 3. These portions must be amended or removed.

Third—Plaintiff must remove or alter representations that diverge from applicable law. Specifically, the proposed notice's attempt to define a collective action, *see* DE 51-6 at 2–3, representations regarding Named-Plaintiff agency, *id.*, and any suggestions of mandatory joint representation, *id.* at 5, are incomplete or inaccurate and must be modified or stricken. *See O'Brien*, 575 F.3d at 583 ("[O]pt-in employees are party plaintiffs, unlike absent class members in a Rule

---

[20] The Court notes that Plaintiff declined to confront, at least with any specificity, Defendants' challenges to the notice proposal. DE 56 at 15.

23 class action."); *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003) ("[U]nder § 216(b), the named plaintiff does not have the right to act in a role analogous to [a] private attorney general[.]").[21] Plaintiff could readily cure most such issues by advising that potential members may choose either to authorize Plaintiff's counsel to represent them or to hire their own lawyer.[22] *Heaps v. Safelite Sols., LLC*, No. 2:10 CV 729, 2011 WL 1325207, at *9 (S.D. Ohio Apr. 5, 2011) ("Informing potential plaintiffs of their right to [choose] their own counsel is an appropriate [notice] element[.]") (collecting cases).[23]

    <u>Fourth</u>—Plaintiff must accurately identify potential obligations attending an opt-in choice. [The notice certainly should not advise, incorrectly, that recipients categorically "do not need to attend the trial." DE 51-6 at 5.] The Court finds the following additions necessary to ensure that the form is sufficiently "accurate" for putative plaintiffs to "make informed decisions about whether to participate[,]" *Hoffmann-La Roche*, 110 S. Ct. at 486–87:

---

[21] As Wright, Miller & Kane—approvingly cited by the Sixth Circuit in *O'Brien*, 575 F.3d at 583—put it,

> Probably the most significant difference in procedure between the FLSA and Rule 23 is that the statute contains a requirement that plaintiffs desiring to be included in the litigation must "opt in" to the suit by filing a written consent with the court. . . . This difference means that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not. Consequently, although the original plaintiffs in a collective action may pursue the suit on a representative basis, each FLSA claimant has the right to be present in court to advance his or her own claim.

7B Fed. Prac. & Proc. Civ. § 1807 (3d ed. 2005) (footnotes omitted); *see also Johnson v. TruGreen Ltd. P'ship*, No. A-12-CV-166-LY, 2013 WL 12120413, at *4 (W.D. Tex. May 21, 2013) (quoting § 1807). *But see Williams*, 2017 WL 987452, at *9 (declining to add counsel choice language to "Proposed Notice clearly stat[ing] that potential opt-in plaintiffs may pursue relief individually").
[22] The notice, minimally, acknowledges this right, *see* DE 51-6 at 5 ("your own lawyer"), but omits proper references at critical junctures.
[23] The ¶ 16 statement regarding address updates should account for the possibility of independent counsel retention.

-- A statement advising: If you do not prevail on your claim, court costs and expenses could possibly be assessed against you.[24]

-- Notice that: While the suit is proceeding, you may be required to provide information, sit for a deposition, and testify in court.[25]

The Court finds no merit in the balance of Defendants' contentions regarding the notice's form. In managing notice, the Court's discretion extends to "any manner not inconsistent with" federal or local rules, *Hoffmann-La Roche*, 110 S. Ct. at 487 (quoting Fed. R. Civ. P. 83); though it must "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 488.[26] As to arguments against (1) mentions of Act Fast, DE 55 at 21, (2) references to resolution, given the possibility of decertification, *id.*, and (3) omission of a statement that an opt-in "may not" benefit from joining the suit, *id.* at 23, the Court sees (and Defendants argue) no inconsistency with federal law or tacit endorsement risk. Further, the Court views removal of references to Act Fast (or incorporation of a statement clarifying Act Fast's non-party status) as likely to confuse notice recipients with no discernable benefit. Defendant's "resolution" quibble ignores the fact that a decertification would be a resolution of the certification "issue[.]" DE 51-6

---

[24] *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 375 (N.D.W. Va. 2012) (citation and quotation marks omitted). The Court acknowledges the split among trial courts on the propriety of cost-assessment warnings. *See id.* at 374–75. However, the Court finds that the "clearly possible" and "not merely theoretical" risk necessitates fair warning. *Creten–Miller v. Westlake Hardware, Inc.*, No. 08–2351, 2009 WL 2058734, at *4 (D. Kan. July 15, 2009) (collecting cases); *see Frye*, 507 F. App'x at 508 (affirming $55,401.63 cost award to FLSA collective Defendant). *But see id.* ("[T]he court reasonably declined to apportion the costs associated with decertification among the opt-in plaintiffs, given that those individuals were not notified that they may be responsible for defense costs and did not consent to such an apportionment.").
[25] *See Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 939 (N.D. Ill. 2008) (approving nearly identical verbiage).
[26] To this end, Davis must also remove, from the initial disclaimer, the representation that the notice is "A COURT APPROVED COMMUNICATION[,]" as well as any suggestion that it is the Court that is "issuing th[e] Notice[.]" DE 51-6 at 2–3. This verbiage simply walks too close to a tacit merits endorsement. Plaintiff also should modify paragraph 9 to reflect that the Court has *authorized* Davis to notify an initially certified class, not "ordered notice[.]" DE 51-6 at 4.

at 2; *see O'Brien v. Ed Donnelly Enterprises, Inc.*, No. 2:04-CV-85, 2006 WL 8442895, at *3 (S.D. Ohio Jan. 20, 2006) ("[I]f the class is decertified, "the opt-in plaintiffs are dismissed without prejudice."). Also, the Court sees no need to add "may not"—a concept inherent in Plaintiff's use of the term "may"—to the notice's reference to possible recovery. DE 51-6 at 4. Defendants' arguments on these points warrant no modification.

### b. Opt-in Form

Plaintiff's motion failed to attach a proposed opt-in form (as the proposed document contemplates). DE 51-6 at 2. Defendants, fairly, object to mailing of any form absent a review opportunity. DE 55 at 21. Davis, frustratingly, failed to address this objection in reply. Thus, the Court construes Davis's signed version (DE 42-1) as embodying Plaintiff's proposed form. Plaintiff must, at minimum, correct the case caption and include, as an alternative to the ¶ 4 "designat[ion]" an option for opt-ins to select their own counsel with space for interlineal initialing to reflect an opt-in's choice. Defendants, on terms, will have an opportunity to review the form prior to final notice authorization.

### c. No Contact/Redirect

Plaintiff requests an Order barring "Defendants from communicating with the class members regarding this lawsuit or its resolution during the opt-in period and requiring them to refer Class Members who contact them to Plaintiffs' counsel." DE 51-1 at 14. Davis cites no supportive authority for this proposed limitation.

As to the referral, a notice recipient will, by virtue of the document's content, have contact information for Plaintiff's counsel. The Court sees no basis for prospectively prohibiting a potential claimant from contacting Defendants if they so choose (or establishing a blanket redirect to lawyers that a notice recipient has knowingly declined to contact). *See Mevorah v. Wells Fargo*

*Home Mortg., Inc., a div. of Wells Fargo Bank*, No. C 05-1175 MHP, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) ("Pre-certification communications to potential class members by both parties are generally permitted, and also considered to constitute constitutionally protected speech."); *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 869 (S.D. Ohio 2011) (FLSA bans "private settlements of disputes about pay" (citation and quotation marks omitted)). The Court trusts that Defendants' licensed counsel will ensure any contacts with potential claimants fall within recognized ethical and legal boundaries.

### d. Notice Mechanics

Regarding notice mechanics, Plaintiff requests the following:

(i)     Electronic and first class, standard mailing within seven days of member identification;

(ii)    Retention of a third-party class action administrator to conduct, with counsel oversight, the actual mailing;

(iii)   A 60-day opt-in period following notice mailing; and

(iv)   A second notice 30 days after the initial notice attempt.

DE 51-1 at 12–14. Defendants oppose the re-notice request, but do not otherwise object to the proposed mechanics. As to the first three aspects, the Court finds Plaintiff's proposal appropriate and, thus, approves such measures.[27] As to the 2nd-wave mailing, "Plaintiffs have not explained why reminder notices are necessary in this case, and in the interest of eliminating the concerns of judicial endorsement detailed above, the Court declines to authorize the issuance of a reminder notice." *Williams*, 2017 WL 987452, at *8; *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) ("Many courts have rejected reminder notices,

---

[27] *See Williams*, 2017 WL 987452 (authorizing "dual notification" via email and first-class mail). The Court takes no position as to who might ultimately be responsible for what Plaintiff deems "up-front" charges or for compensating any third-party administrator. DE 51-1 at 12–13.

recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit and encouraging participation.").

### e. Member Identification

Plaintiff initially requested that the Court order Defendants to produce contact information for putative collective members. DE 51-1 at 12. However, the reply advises that Plaintiff has since obtained "Act Fast 1099 forms for drivers for the years in question" and that the "issue is [now] moot." DE 56 at 15. Thus, the Court declines to order such production. On the other hand, Defendants argue that the 1099 information is not "coterminous with Plaintiff's proposed collective definition[.]" DE 60-2. No party has filed the subject documents. Nonetheless, the Court is confident, given Defendants' lengthy relationship with Act Fast and the proof that Defendants' received certain identifying Driver information,[28] that the parties can sift through the 1099s and— as Defendants have already begun to do, *see* DE 60-2 at 6 (1099s include "at least one corporate entity")—weed out any extraneous parties.

## V.    CONCLUSION

For these reasons, the Court **ORDERS** as follows:

1.  The Court, to the extent and on the terms stated in this Order, **GRANTS** DE 51 **IN PART** and **CONDITIONALLY CERTIFIES** a collective defined as:

    All current and former delivery drivers classified as independent contractors who performed work for Defendants and were based at a distribution center located in Ashland, Beattyville or Lexington, Kentucky, and who received their last paycheck on or after December 3, 2016.

2.  To ensure accurate identification of individuals within the defined collective, Plaintiff **SHALL**, within **7 days,** provide the defense a proposed list of notice recipients

---

[28] An Omnicare General Manager, Brenda Carroll, testified that Omnicare obtained, at minimum, Drivers' names for purposes of obtaining security cards. DE 56-2 at 3 (Dep. at 8–9).

accompanied by any applicable supporting documentation. Defendants **SHALL** review the proposal and, within **4 days** of receipt, advise Plaintiff of specific objections, if any, to the identified recipients;

3. Within **14 days** of this Order, the parties **SHALL** file either: (I) a joint status report attaching an agreed list of notice recipients (redacted, per Fed. R. Civ. P. 5.2, as appropriate), or (II) if the parties are unable to agree, separate reports (not to exceed 5 pages) addressing any unresolved disputes, attaching proposed notice lists, and including any documentation relevant to the disputed recipients;

4. To give Defendants a fair opportunity to review the (as-yet unfiled) opt-in form, Plaintiff **SHALL**, within **7 days**, provide the defense a proposed form (modified to reflect the Court's findings and directions in this Order). Defendants **SHALL** review such form and, within **4 days** of receipt, advise Plaintiff of specific objections, if any;

5. Within **14 days** of this Order, the parties **SHALL** file either: (I) a joint status report attaching an agreed proposed opt-in form, or (II) if the parties are unable to agree, separate reports (not to exceed 2 pages) addressing any unresolved disputes, attaching proposed forms, and including any documentation relevant to a lingering objection;

6. Within **7 days** of this Order, Plaintiff **SHALL**, via Notice of Filing, tender in the record a Proposed Notice modified to reflect the Court's findings and directions in this Order. Within **4 days** of such filing, Defendants **SHALL** file either: (I) a notice of non-opposition to the modified proposal, or (II) objections (not to exceed 3 pages) identifying any provision of the revised notice Defendants view as inconsistent with this Order or <u>binding</u> precedent. [To be clear, this is not an invitation for Defendants to rehearse arguments the Court has, here, rejected or lodge fresh complaints premised on

non-binding contrary authority.] Plaintiff **may** respond (subject to a like 3-page limitation) within **3 days** of Defendants' objections, if any;

7. The Court provisionally **AUTHORIZES** notice to the conditionally certified collective under the mechanics approved in this Order. However, the Court withholds final approval of notice mailing pending finalization of the recipient list, opt-in form, and notice content.

This the 3rd day of December, 2019.

Signed By:

*Robert E. Wier*

**United States District Judge**