**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | | |
|---|---|---|
| **DANIEL DAVIS, individually** | ) | |
| **and on behalf of himself and all** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 5:18-cv-00142-REW-MAS** |
| | ) | |
| **v.** | ) | *Filed electronically* |
| | ) | |
| **OMNICARE, INC.,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**JOINT MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF JOINT MOTION**
**FOR PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT**

**I.     INTRODUCTION**

This class and collective action wage and hour lawsuit against Defendant Omnicare, Inc. and its wholly-owned subsidiaries, Defendant Home Care Pharmacy, LLC, Defendant D & R Pharmaceutical Services, LLC, and Defendant Three Forks Apothecary, LLC (collectively "Omnicare" or "Defendants"), has been settled, subject to this Court's approval, following an arm's-length mediation process. The parties respectfully submit this joint motion and memorandum of law in support of their Joint Motion for Preliminary Approval of the Settlement Agreement. As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's preliminary approval.

On February 19, 2018, Plaintiff Daniel Davis ("Plaintiff") filed a Class and Collective Action Complaint in the Eastern District of Kentucky alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") and Kentucky statutory and common law. Plaintiff alleged that he and similarly situated individuals who contracted with Act Fast Delivery

1

of Kentucky ("Act Fast") performed delivery and dispatch work from Defendants' pharmacies in Lexington, Ashland, and Beattyville, Kentucky were misclassified as purported independent contractors and alleged that they were jointly employed by Act Fast and Defendants. Plaintiff alleged that, as a result, he and other similarly situated individuals were not paid at least the minimum wage for all hours worked and at the rate of time and one-half (1 ½) for hours worked in excess of forty (40) in a week. See Dkt. 1 at ¶ 50. Plaintiff also alleged that Defendants violated Kentucky's wage deduction statutes in connection with unlawful withholdings from workers' pay. Id. Plaintiff further alleged that Defendants improperly classified them as independent contractors. Defendants denied that they were joint employers of Plaintiff and any allegedly similarly situated individuals and denied that Plaintiff and any allegedly similarly situated individuals were owed damages of any type.

Defendants filed their Answer and Affirmative Defenses on March 16, 2018. (Dkt. 4.) Shortly thereafter, on March 27, 2018, the Defendants moved for judgment on the pleadings. See Dkt. 11. The Plaintiff opposed Defendants' motion (see Dkt. 16) and the Court ultimately denied it. See Dkt. 23. Thereafter, the parties engaged in substantial discovery and motion practice including, but not limited to: Plaintiff's motion for conditional certification and Defendants' opposition, Defendants' motion to decertify the collective and Plaintiff's opposition, and Plaintiff's motion to certify the Rule 23 class action and Defendants' opposition. All material issues in this case have been hotly contested at all times.

The parties mutually agreed to mediate and attempt to resolve this case prior to the summary judgment and Daubert motion deadlines. See Dkt. 121. Prior to the mediation, both parties submitted detailed, substantive mediation statements to nationally renowned FLSA mediator Hunter Hughes, III, Esq. Further, as this Court is aware, the parties have been engaged

in discovery since January 2019 and have had the opportunity to analyze voluminous records from the parties and from third-parties, such as Act Fast, weighing on the parties' respective claims, defenses, and assessment of damages. Plaintiff hired an expert to review and analyze the available delivery data to estimate the alleged hours worked and miles driven by Plaintiff and three other opt-in plaintiffs, and Plaintiff's expert intended to supplement with proposed damages analyses for other Settling Class Members if the case was not resolved through mediation. Defendants' expert disagreed with Plaintiff's expert's analysis and methodology. Both experts prepared substantial reports and were deposed at length. Accordingly, the parties were well-prepared to engage in good-faith arm's length negotiations with the assistance of Mr. Hughes. The mediation took up the entire business day on June 22, 2020 and extended into the evening hours.[1]

On June 29, 2020, the parties filed a joint status report with the Court notifying the Court that the June 22 mediation had been successful and that the parties were currently in the process of finalizing the terms of a settlement agreement that had been reached in principle.[2] See Dkt. 123. In their joint status report, the parties agreed that the terms of this agreement reflected "a fair and reasonable compromise that should receive Court approval." Id. at ¶ 4. Indeed, the Parties submit that the Gross Settlement Fund of one million dollars ($1,000,000) is an exceptionally fair outcome for class members, given the risk of litigation in this hotly contested case. Based upon this settlement, it is estimated that the highest class member share will be

---

[1]  The mediation was conducted via a Zoom video conference due to the COVID-19 pandemic.

[2]  The parties further noted that the agreement had been reached in principle but were working on resolving two remaining issues that they anticipated to resolve shortly. See Dkt. 23. The parties have since resolved those issue and reached agreement on all issues pertaining to the settlement of this case.

approximately $31,308 if 100% of Class Members file valid claims forms. Declaration of

Rebecca Shuford (attached as Exhibit 2) at ¶¶ 7-8. The average share will be around $2,839.41 at

an 100% claims rate. If, as expected, the claims rate is closer to 70%, the average share will be

around $4,049.00. Id. See Declaration of Shuford and Exhibit A to Declaration of Shuford.[3]

The parties have since finalized the terms of the Settlement Agreement (the "Settlement

Agreement" or "Agreement") (attached as Exhibit 1).[4] As explained more fully below, the

Settlement Agreement provides for the payment by Defendants of one million dollars

($1,000,000) to fully and finally resolve the litigation in its entirety. There are approximately 198

readily identifiable class members.[5] If the Court preliminarily approves the settlement, the

Settlement Class Members will be notified of the settlement and will be provided a Claim Form

to submit to the Claims Administrator in order to receive his or her proportionate share of the

Net Settlement Fund pursuant to the allocation formula set forth in paragraph 3 (C) of the

Settlement Agreement.

---

[3]     Ms. Shuford calculated approximate shares at a 100%, 70%, and 50% claims rate for the
Court's consideration. As reflected in Exhibit 1 to Ms. Shuford' s declaration, she factored in
estimated attorneys' fees, costs, settlement administration costs, and the allocation set aside for
corrective purposes.

[4]     Capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in
the Settlement Agreement.

[5]     Due to incomplete records maintained by third-parties that provided drivers or
dispatchers to facilitate deliveries from Defendants' Kentucky facilities, there may be additional
individuals who present claims in connection with the administration of this settlement.
Specifically, Plaintiff has identified 204 individuals (6 of whom Plaintiff only has first names
currently) and Ms. Shuford's analysis is based on apportioning approximate shares to these 204
individuals as described fully in her declaration. Defendants have indicated that there may be as
many of 220 Class Members. Given that it is possible that additional Class Members may come
forward in response to the settlement notice being posted in local Kentucky newspapers, the
parties have agreed to set aside $20,000 to account for this issue and other disputes with respect
to individual settlement calculations. This $20,000 set aside was factored into Ms. Shuford's
analysis. Those currently unidentified claimants will be paid from funds set aside for payment of
such claims in the Settlement Agreement.

The proposed settlement reflects a reasonable compromise over hotly-contested issues and provides an excellent recovery for Settlement Class Members with respect to their claims for alleged violations by the Defendants of the Fair Labor Standards Act ("FLSA") and Kentucky Wage Act. If this litigation is not settled now, it is possible that the litigation would ultimately result in no recovery for the Settlement Class Members or a recovery that is much less favorable than the proposed settlement. See Lichten Decl. (attached as Exhibit 3) ¶ 12.

Accordingly, the Parties respectfully request that the Court issue an order: 1) granting preliminary approval of the Settlement Agreement; 2) preliminarily certifying the Rule 23 Settlement Class pursuant to Fed. R. Civ. P. 23 for purposes of settlement only; 3) preliminarily appointing Plaintiff Daniel Davis as Class Representative; 4) preliminarily appointing Goodwin & Goodwin, LLP, Lichten & Liss-Riordan, PC, and Craig Henry PLC as Class Counsel; 5) approving the Notice to the Settlement Class Members; and 6) approving the proposed schedule and procedure for the final approval of the Settlement Agreement. The Parties respectfully submit that this motion should be granted because the Settlement Agreement satisfies all of the criteria for approval and falls squarely within the range of reasonableness recognized by federal courts.

## II.    THE TERMS OF THE SETTLEMENT AGREEMENT

### A.    Calculation of the Net Settlement Fund and Distribution among the Settling Plaintiffs

The Settlement Class consists of approximately 198 known drivers and dispatchers who performed delivery and dispatcher services from the subject pharmacies in Kentucky during the period February 19, 2013 to March 25, 2018. The Settlement Agreement provides that each Settling Plaintiff shall be eligible to receive his or her proportionate share of the Net Settlement Fund, with a minimum payment of one hundred dollars ($100) for those working only a few

weeks. See Agreement, Article 3(C). The Net Settlement Fund is the Gross Settlement Fund—of one million dollars ($1,000,000)—less the sum of (1) Attorneys' Fees and Costs, (2) one-half of the fees and expenses of the Claims Administrator, (3) the Allocation Correction Set-Aside ($20,000) and (4) the Service Payment ($5,000) to Plaintiff. Id. The Settlement Agreement further provides that the Net Settlement Fund shall be divided into two Settlement Pools: the Driver Settlement Pool and the much smaller Dispatcher Settlement Pool. Id.

The Settlement Agreement provides that the Driver Settlement Pool is estimated to be $545,166.67, which shall be allocated to Settlement Class Members who worked as delivery drivers, approximately 192 Class Members. Id. Each delivery driver will receive his or her proportionate share of the Driver Settlement Pool based upon the percentage of miles that the driver drove during the Class Period compared to the class-wide total adjusted mileage based on Plaintiff's expert Eric Henson's mileage calculations. Id. The mileage for drivers who were FLSA opt-in members shall be adjusted upward using a multiplier of 1.2 in recognition of their having opted into the FLSA part of the case during the pendency of this litigation. Id. In those limited instances where the driver's mileage calculations are unavailable, their mileage will be estimated using the average mileage per delivery for the Settlement Class times the approximate number of deliveries made by the driver as ascertained from the delivery data. Id.

The Settlement Agreement provides that the amount of the Dispatcher Pool shall be $25,000 and shall be allocated to Settlement Class Members who worked as dispatchers only, approximately 12 Class Members. Id. Each dispatcher shall receive his or her proportionate share of the Dispatcher Settlement Pool based upon the number of weeks worked by that dispatcher to the total weeks worked by all dispatchers during the Class Period. Id. The number of weeks for

dispatchers who were FLSA opt-in members shall be adjusted upward using a multiplier of 1.2 in recognition of their opting into the FLSA case. Id.

Counsel will make reasonable efforts to contact Class Members who fail to cash their settlement checks within 6 months of receipt so that they may be issued a new check for the amount allocated under the Settlement Agreement. If after one year class members who have failed to cash their checks do not request issuance of a new check, any remaining settlement funds shall be donated cy-pres to Kentucky Legal Aid.

**B.** **Notice of the Settlement to the Settlement Class Pool**

The Settlement Agreement provides that if the Agreement is preliminarily approved by this Court, the Parties will provide a class list to the Claims Administrator that provides the best-known information about the Settlement Class Members. See Agreement, Article 7(C)(i). The Claims Administrator shall also conduct searches of available databases to attempt to identify Class Members for whom the Parties do not provide complete identifying information. Id.

The Settlement Agreement further provides that within thirty days after the Claims Administrator has received the best-known information about the Settlement Class Members, the Claims Administrator shall mail and email (where available) to the Settlement Class Members a notice of the Settlement and consent and claim form in the form attached to the Agreement, labeled Exhibit A. See Agreement, Article 7(C)(ii). The Notice shall inform the Settlement Class Members of their eligibility to participate in the Settlement by submitting the consent and claim form, thereby becoming a Settling Plaintiff, as well as their anticipated settlement allocation. Id.

The Settlement Agreement additionally provides that the Claims Administrator shall arrange for the notice attached as Exhibit C to the Settlement Agreement to be published on three consecutive days in the Daily Independent, Lexington Herald Leader and Beattyville Enterprise, or such other local papers in Ashland, Lexington or Beattyville deemed appropriate by the

Claims Administrator and which are distributed and have significant readership in Ashland, Lexington, and Beattyville, Kentucky and surrounding communities. <u>See</u> Agreement, Article 7(C)(iii).

After the initial issuance of notice, the Claims Administrator will mail and email (where available) a reminder notice to individuals who have not yet submitted a Valid Claim Form within thirty days of the initial issuance of notice. <u>See</u> Agreement, Article 7(C)(iv). The Claims Administrator shall also provide a secure claims process for on-line claims submission. <u>Id.</u> The Claims Administrator shall also be permitted to make phone calls to class members, and shall do so, to remind them of their right to submit a Valid Claim Form.

C.     **<u>Release of Claims</u>**

The Settlement Agreement provides that the Named Plaintiff shall release Defendants and other Released Parties from any and all suits, actions, causes of action, claims, or demands based on putative violations of any state or local law (both statutory and common law) or federal law pertaining to hours of work or payment of wages, including all possible claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. that were asserted or could have been asserted in the Litigation with respect to work performed in Kentucky, from the beginning of time until March 25, 2018. <u>See</u> Agreement, Article 4(A).

The Settlement Agreement further provides that the Settling Plaintiffs and Existing Opt-ins shall release Defendants and other Released Parties of all wage and hour claims (state and federal) arising from the facts alleged or that could have been alleged as related to the facts pled in the complaint during the class period of February 19, 2013 through March 25, 2018. <u>Id.</u>, Article 4(B)(i). The limited release specifically excludes any claims, including wage and hour claims, that Settling Plaintiffs and Existing Opt-ins may have as a result of holding any other position with Omnicare other than as an independent contractor driver or dispatcher. <u>Id.</u>

Settlement Class Members who do not submit a Valid Claim Form but who also do not opt out of the settlement, will not release FLSA claims but will release state law claims arising from the facts alleged or that could have been alleged as related to the facts plead in the complaint during the during the class period of February 19, 2013 through March 25, 2018. Id., Article 4(B)(ii). Excluded from the release are any claims which cannot be waived by law, including the right to file a charge with or participate in an investigation conducted by any state, or local government agency. Id. This limited release also specifically excludes any claims, including wage and hour claims, that Settlement Class Members may have as a result of holding any other position with Omnicare other than as an independent contractor driver or dispatcher. Id.

### D.     Attorneys' Fees and Costs

The Settlement Agreement provides for an award of attorney's fees for Class Counsel amounting to one-third of the Gross Settlement Fund (i.e., $333,333.33). Class Counsel may also apply for up to half of their litigation costs and expenses from the Gross Settlement Fund in addition to their requested attorneys' fees. See Agreement, Article 3(F). The Settlement Agreement further provides that any amount allocated as attorneys' fees and costs under this paragraph, but not approved by the Court, shall be re-allocated to the Net Settlement Fund, to be proportionally distributed to the Settling Plaintiffs. Id.

## III.   DISCUSSION

The Parties respectfully request that the Court enter the accompanying proposed Order preliminarily approving the Settlement.

A.    **Applicable Legal Standard**

1.    **Legal Standard for Approval of FLSA Settlements**

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945); see also Crawford v. Lexington-Fayette Urban Cnty. Gov., Civil Action No. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) ("Employees are guaranteed certain rights by the FLSA, and public policy requires that these rights not be compromised by settlement."). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b)—the situation applicable here. Cheeks v. Freeport Pancake H., Inc., 796 F.3d 199, 206 (2d Cir. 2015); Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor, 679 F.2d 1350, 1353 (11th Cir. 1982); Diaz v. New Work City, Inc., 2017 WL 4682345, at *2 (N.D. Ohio Oct. 18, 2017).

When parties bring a proposed settlement of an FLSA claim before a court, the Court must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a *bona fide* dispute. Lynn's Food, 679 F.2d at 1354-55; see also Steele v. Staffmark Invs., LLC, 172 F. Supp. 1024, 1025 (W.D. Tex. 2016). "The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." Diaz, 2017 WL 4682345, at *2. If a settlement in an FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or

computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." Lynn's Food, 679 F.2d at 1354. The Court "must take an active role in approving the settlement agreement to ensure that it is not the result of the employer using its superior bargaining position to take advantage of the employee." Rakip v. Paradise Awnings Corp., 514 F. App'x 917, 919-20 (11th Cir. 2013); Steele, 172 F. Supp. at 1026 (". . . based on the unique purpose of the FLSA and the unequal bargaining power between employees and employers, this Court finds that FLSA settlements require approval by either the Department of Labor or a court."). "The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace." See Wingrove v. D.A. Techs., Inc., No. 1:10-CV-3227-HLM-WEJ, 2011 WL 7307626, at *1 (N.D. Ga. Feb. 11, 2011), report and recommendation adopted, 2011 WL 7324219 (N.D. Ga. Feb. 14, 2011) (quoting Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1237 (M.D. Fla. 2010)); see also Rotuna v. W. Customer Mgmt. Group LLC, No. 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) (quoting Collins v. Sanderson Farms, Inc., 568 F.Supp.2d 714, 719 (E.D. La. 2000) (further citation omitted)) (in evaluating a proposed FLSA settlement, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'"). "The Court should also consider the following factors: the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement." Crawford, 2008 WL 4724499, at *3, citing Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007); Granada Invs., Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir.1992). The

Settlement Agreement in this case meets the requirements for fairness and reasonableness with respect to the FLSA Collective Members and furthers the implementation of the FLSA.

### 2. Legal Standard for Preliminary Approval of Rule 23 Class Action Settlement

"Rule 23(e) provides that '[a] class action shall not be dismissed or compromised without the approval of the court . . . .'" In re Telectronics Pacing Sys., Inc., 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) (quoting Fed. R. Civ. P. 23(e)). "[T]he standard developed by the courts is to determine whether the proposed 'settlement is fair, adequate, and reasonable under the circumstances, as well as consistent with public interests', and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than if pursued to a verdict by a jury." Id. (citing Bailey v. Great Lakes Canning, Inc., 908 F.2d 38, 42 (6th Cir.1990); In re Rio Hair Naturalizer Prod. Litig., No. MDL 1055, 1996 WL 780512, at *9 n. 11 (E.D. Mich. Dec. 20, 1996)). Fed. R. Civ. P. 23(e) outlines a two-step process by which district courts first determine whether a proposed class action settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified. See Manual For Complex Litig. (Third) § 30.41, at 236–37.

The Parties seek preliminary approval pursuant to Fed. R. Civ. P. 23(e). At the preliminary approval stage, "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." In re Inter-Op Hip Prosthesis Liab. Litig., 204 F.R.D. 330, 350 (N.D. Ohio 2001) (quoting Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco, 688 F.2d 615, 625 (9th Cir.1982), cert. denied, 459 U.S. 1217, 103 S. Ct. 1219, 75

L.Ed.2d 456 (1983)); see also Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am.,

AFL-CIO, 803 F.2d 878, 880 (6th Cir. 1986) (indicating that at the preliminary approval stage,

courts must review proposed class action settlements to ensure that they are not "the product of

fraud or overreaching by, or collusion between, the negotiating parties and that the settlement,

taken as a whole, is fair, reasonable and adequate to all concerned."). "Thus, the Court, at this

juncture, is not obligated to, nor could it reasonably, undertake a full and complete fairness

review." Id.; see also Manual For Complex Litig. (Third), § 21.63 ("At the stage of preliminary

approval, the questions are simpler, and the court is not expected to, and probably should not,

engage in analysis as rigorous as is appropriate for final approval.").

### B.     The Terms of the Proposed Settlement Are Fair, Adequate and Reasonable and Resolve A *Bona Fide* Dispute

The Settlement meets the standard for approval under both the FLSA and Rule 23. To

approve the Agreement, the Court must find that (1) the litigation involves a *bona fide* dispute,

(2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed

settlement contains a reasonable award of attorneys' fees.[6] See Lynn's Food Stores, 679 F.2d at

1354.

### 1.     A *Bona Fide* Dispute Existed Between the Parties

"The fairness of each settlement turns in large part on the bona fides of the parties' legal

dispute." See United Auto Workers, 497 F.3d at 631. This inquiry does not require a court to

"decide the merits of the case or resolve unsettled legal questions," but does require "weighing

the plaintiff's likelihood of success on the merits against the amount and form of the relief

offered in the settlement." Id., citing Carson v. Am. Brands, Inc. 450 U.S. 79, 88 n.14 (1981). A

---

[6]     See Ware v. CKF Enterprises, Inc., No. CV 5:19-183-DCR, 2020 WL 2441415, at *17
(E.D. Ky. May 12, 2020) ("the common fund approach can be appropriate in cases involving
settlement funds paid to a FLSA collective and a Rule 23 class.")

district court may find that a proposed settlement agreement resolves a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute." Lynn's Food Stores, 679 F.2d at 1354. In reviewing a proposed FLSA settlement, "a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" Bartlow v. Grand Crowne Resorts of Pigeon Forge, No. 3:11-CV-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012) (quoting Lynn's Food Stores, 679 F.2d at 1355).

Plaintiff's Complaint alleges that Defendants were joint employers of Plaintiff and similarly situated individuals who contracted with Act Fast. Accordingly, Plaintiff alleges, he and other similarly situated drivers and dispatchers were denied minimum wages and statutorily required overtime payments (after accounting for unreimbursed work expenses, alleged kick-backs, and unpaid overtime) in violation of the FLSA and Kentucky state law. See Dkt 1. Specifically, Plaintiffs contend that they were joint employees of Defendants as a matter of economic reality and Kentucky law and were not subject to any exemption from state and federal statutory wage protections. Defendants deny these allegations and assert numerous defenses they believe would defeat Plaintiffs' claims in whole or in part. Specifically, Defendants have argued that they were not joint employers of Plaintiff and allegedly similarly situated drivers and dispatchers, that Plaintiff and the alleged collective and class did not suffer any damages, and that class and collective action treatment of the Plaintiffs' claims is not appropriate, given the various arguments set forth fully in Defendants' opposition to Plaintiff's motion for class certification. Lichten Decl. ¶ 10. Further, absent settlement, the parties were likely to file competing motions for summary judgment on various issues and Defendants had indicated that they intended to file a Daubert motion in an effort to disqualify Plaintiff's expert with respect to

his crucial damage analysis/methodology. If the Court determined that factual disputes precluded summary judgment, a fact-intensive trial would be necessary and appeals may have followed. Id. ¶ 11.

The agreed-upon Gross Settlement Amount was carefully negotiated based on extensive discovery, a substantial investigation by Plaintiff's Counsel, and the review and analysis of documents and data obtained in discovery as well as the legal arguments set forth by both parties in their briefing at the Rule 23 class certification stage. The Settlement Agreement specifically accounts for the risks faced by each side in the class certification and summary judgement stages of this hotly contested litigation. The risks in this case are substantial for both sides. Thus, a *bona fide* dispute exists.

## 2.     The Proposed Settlement Is Fair and Reasonable

Because the Sixth Circuit Court of Appeals has not definitively set out FLSA-specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Fed. R. Civ. P. 23. Crawford v. Lexington-Fayette Urb. County Govt., CIV. A. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (citing Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)). These factors include: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. Int'l Union, 497 F.3d at 631.

Here, the Gross Settlement Amount provides the Settlement Class Members with recovery of alleged unpaid wages, and it was carefully negotiated based on factual discovery, a

substantial investigation by Plaintiff's Counsel, and the review and analysis of all factual and

legal arguments advanced by both parties throughout the course of this litigation. See Lichten

Decl. ¶ 14. Specifically, the Gross Settlement Amount will be divided into two Settlement Pools:

the Driver Settlement Pool and the Dispatcher Settlement Pool. The amount of the Driver

Settlement Pool will be allocated to Settlement Class Members who worked as delivery drivers,

and each delivery driver shall receive his or her proportionate share of the Driver Settlement

Pool based upon the percentage of miles that the driver drove during the Class Period compared

to the class-wide total adjusted mileage based on the mileage calculations of Plaintiff's expert,

Eric Henson.[7] See Agreement, Article 3(C). Therefore, individuals who drove more miles during

the claims period (and therefore were more likely to incur substantial damages based on

unreimbursed work expenses) will receive a greater share compared to drivers who drove fewer

miles during the claims period. The amount of the second pool, the Dispatcher Settlement Pool,

will be allocated to Settlement Class Members who worked as dispatchers. Each dispatcher shall

receive his or her proportionate share of the Dispatcher Settlement Pool based upon the number

of weeks worked by that dispatcher—as determined by reference to pay stubs—compared to the

total weeks worked by all dispatchers during the Class Period. Id.

     Importantly, because Section 216(b) of the FLSA requires individuals to opt in to the

case in order to participate, the Settlement provides certain relief for members of the Settlement

Class Pool who may not have been willing or able to join the action during the pendency of this

litigation. Because Settlement Class Members must submit a Claim Form to recover a Settlement

---

[7]    In those limited instances where the driver's mileage calculations are unavailable, their mileage will be estimated using the average mileage per delivery for the Settlement Class times the approximate number of deliveries made by the driver as ascertained from the delivery data.

Award[8], it is likely that less than 100% of the Settlement Class Pool will submit Claim Forms. Lichten Decl. ¶ 15; Agreement ¶¶ 11(h), 15. Accordingly, while the claims rate cannot be determined until Final Approval, it is expected that individuals in the Settlement Class Pool who choose to participate in the *non-reversionary* settlement will receive a larger share of the Gross Settlement Amount than compared to Ms. Shuford's allocation estimate at a claims rate of 100%. See Exhibit 1 to Shuford Decl. The estimated allocation to Class Members reflected in Ms. Shuford's calculations is even after deductions for attorneys' fees and costs are made from the Gross Settlement Amount. Based on the data currently available to counsel, up to approximately 186 drivers total may file claims forms to and receive a proportionate share of the Driver Settlement Pool, and up to approximately 12 dispatchers total may opt in to and receive a proportionate share of the Dispatcher Settlement Pool (plus approximately 22 Class Members who have been identified as having performed work during the claims period, but whose contact information is not presently known). Thus, subject to the aforementioned formulas for determining class members' proportionate shares, approximately 198 to 220 class members (or fewer if valid claims forms are not filed) will share in the Gross Settlement Amount of $1,000,000 minus deductions for attorneys' fees, costs, and Plaintiff's one-half share of settlement administration fees.

The proposed allocation formula is also fair and reasonable and should be approved. See Amos v. PPG Indus., 2019 WL 3889621, at *10 (S.D. Oh. August 16, 2019) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."), citing In re Crocs, Inc., Securities Litigation, 306 F.R.D. 672,

---

[8]     The Claims Administrator will notify class members by multiple means of the settlement and eligibility to participate in the settlement.

692 (D. Colo. 2014); see also In re Auto Parts Antitrust Litig., 2019 U.S. Dist. LEXIS 219819, at

*89 (E.D. Mich. Dec. 20, 2019) ("Accordingly, as courts have observed, '[a] district court's

'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund

distribution is fair and reasonable as to all participants in the fund.'"), citing Sullivan v. DB

Investments, Inc., 667 F.3d 273, 326 (3d. Cir. 2011). Under the proposed allocation formula,

each Settling Plaintiff will receive a settlement award.

Where, in comparison to the proposed Settlement, proceeding with litigation would

require a substantial amount of time to yield a benefit to the Settlement Class Members, it is an

indication that the proposed settlement is fair, reasonable, and adequate. See Houston v. URS

Corp., No. 1:08cv203 (AJT/JFA), 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009)) ("When a

settlement agreement has been the subject of arms-length bargaining, with class counsel in a

position to evaluate accurately the chances of the class prevailing if the case went to trial and

where no objections are raised by any of the affected parties, there is a strong presumption in

favor of the settlement."); see also Crawford, 2008 WL 4724499, at *6 (approving FLSA

settlement that was "the product of arm's-length, good-faith settlement negotiations" in a case

which "presented many difficult legal questions"). Here, the complexity and expense of

proceeding with litigation is outweighed by the efficiency and financial relief presented by the

Settlement Agreement.

The Settlement is the result of contested litigation, factual discovery, and arm's-length

negotiations. Lichten Decl. ¶ 14. It was reached only after the Parties exchanged extensive

written discovery and delivery data, engaged in comprehensive expert discovery, and conducted

a full-day mediation session, followed by extensive further discussions between the Parties. Id.

As described above, Plaintiffs' Counsel extensively investigated the applicable law, and applied

it to the relevant facts, taking into account the potential defenses available to Defendants. Id.

Plaintiff's Counsel are experienced and respected litigators with substantial experience in the area of wage and hour class litigation. Id. at ¶¶ 3-7. Based on Plaintiff's Counsel's knowledge and expertise in this area of law, Plaintiff's Counsel believe this Settlement will provide a substantial benefit to the Eligible Class Members and Settlement Class Members. Id. at ¶ 7. In summary, the proposed Agreement is the product of careful factual and legal research and arm's-length negotiations between the Parties.

### C.   The Service Award Is Justified and Should Be Approved

Pursuant to the Settlement Agreement, Defendants have agreed to pay Plaintiff Davis a service award in the amount of Five Thousand Dollars ($5,000.00) for his efforts in bringing and prosecuting this matter, and in addition, for his broader general release against Defendants (which the named Plaintiff has agreed to). See Settlement Agreement (Ex. 1) at ¶ 3(E).

Courts routinely approve incentive awards to compensate named plaintiffs for their efforts in bringing a case. See, e.g., Dillworth v. Case Farms Processing, Inc., 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (quoting Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000)) (approving service awards of $6,000.00 and $4,000.00 to the named plaintiffs) ("Such awards are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'"); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (noting that service awards are especially appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has for the benefit of the class as a whole, undertaken the

risk of adverse actions by the employer or co-workers.").[9]

Here, Plaintiff worked closely with Plaintiff's Counsel, providing background information about his employment, information about Defendants' policies and practices and information concerning the allegations in this lawsuit, responding to discovery requests, and being deposed at length. These efforts assisted Class Counsel in obtaining a substantial benefit for the Settlement Class. Lichten Decl. ¶ 7. Plaintiff is also providing a broader release of claims to Defendants. In addition, Plaintiff took the significant risk of representing the interests of his fellow employees, including risking his reputation in his community and future employment opportunities for publicly bringing suit against a large corporation. For all these reasons, the service award requested by Plaintiff is warranted.

The service award requested in this case is also in line with those approved in wage and hour collective and class actions in wage and hour cases. See Castillo v. Noodles & Co., 16-CV-03036, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) (approving service awards of $10,000.00 to each of the named plaintiffs in FLSA case); see also Karic v. Major Auto. Co., Inc., No. 09 CV 5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (approving $20,000.00 service award to each of the seven named plaintiffs); In re Janney Montgomery Scott LLC Fin. Consultant Litig., No. 06–3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009) (approving $20,000.00 incentive payments in FLSA and Pennsylvania wage and hour case). For these reasons, the service award payment of $5,000.00 to Plaintiff Davis should be approved as

---

[9]     See also Sand v. Greenberg, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); Craig v. Rite Aid Corp., No. 4:08-cv-2317, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), appeal dismissed (3d Cir. Feb. 20, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

fair and reasonable.

**D.      The Court Should Preliminarily Certify the Rule 23 Settlement Class Under Fed. R. Civ. P. 23**

In order to obtain class certification, a party must show that all four prerequisites of Rule

23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b).

See Davis v. Cintas Corp., 717 F.3d 476, 484 (6th Cir. 2013). A case may be certified as a class

action under Rule 23 when:

> (1)      the class is so numerous that joinder of all members is impracticable;
> (2)      there are questions of law or fact common to the class;
> (3)      the claims or defenses of the representative Parties are typical of the claims or defenses of the class; and
> (4)      the representative Parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four threshold requirements are commonly referred to as

"numerosity," "commonality," "typicality," and "adequacy of representation." See Gen. Tel. Co.

of the Sw. v. Falcon, 457 U.S. 147, 157 (1982); In re Whirlpool Corp. Front-Loading Washer

Products Liability Litigation, 722 F.3d 838, 850 (6th Cir. 2013).[10]

Federal Rule of Civil Procedure 23(b)(3) permits courts to certify a class in cases where

"questions of law or fact common to class members predominate over any questions affecting

---

[10]      In evaluating a Settlement Agreement under Rule 23, courts may consider the litigation history to determine whether the Settlement is fair and should be preliminarily approved. See Miller v. Charter Nex Films - Delaware, OH, Inc., No. 2:18-CV-1341, 2020 WL 2896913, at *6 (S.D. Ohio June 2, 2020) ("the parties' motion practice to date, the amount of discovery exchanged, and the Court's familiarity with the status of the litigation, the Court finds that the proposed Agreement falls 'within the range of possible approval.', quoting Armstrong v. Bd. of Sch. Dirs., 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds in Felzen v. Andreas, 134 F.3d 873, 875 (7th Cir. 1998)). Here, the litigation history strongly supports a finding that both parties hotly contested crucial legal issues throughout the proceedings and this Settlement is the result of a fair and reasonable compromise (considering the risk of further litigation on both sides). Courts routinely approve settlements that are the product of similar arm's length negotiations in so-called "hybrid" FLSA and Rule 23 wage and hour litigation. See, e.g., Walburn v. Lend-A-Hand Servs., LLC, No. 2:19-CV-00711, 2020 WL 2744101, (S.D. Ohio May 26, 2020).

only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The substantive terms of the settlement agreement may factor into certain aspects of the certification calculus. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 619 (1997).

Here, Plaintiff moves for preliminary certification of the Settlement Class under Fed. R. Civ. P. 23(b)(3) and requests that the Court provisionally find that all of the requirements for class certification are satisfied for settlement purposes only. Pursuant to the terms of the Settlement Agreement, Defendants have stipulated that, for settlement purposes only, the requisites for establishing class certification pursuant to Fed. R. Civ. P. 23 with respect to the Settlement Class Members have been and are met. See Agreement ¶ 1(W). Defendants reserve the right to oppose class certification if the agreed-upon settlement is not approved or does not come to pass for other reasons. Similarly, Plaintiffs reserve their right to renew their motion for class certification of delivery drivers if the Settlement Class is not approved. Moreover, in evaluating the propriety of this class settlement, the Court need not assess manageability, and the parties take no position on that issue in seeking approval.

### 1.    The Settlement Class Is Sufficiently Numerous

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), a putative class must be so numerous that joinder of all members is impracticable. Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 541 (6th Cir. 2012) "[W]hile there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." Daffin v. Ford Motor Co., 458 F.3d 549, 552 (6th Cir. 2006) (citing In re Am. Med. Sys., 75 F.3d 1069, 1079 (6th Cir.1996)). "The modern trend for meeting the numerosity factor is to require at a minimum between 21 and 40 class members." United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC v. Kelsey-Hayes Co., 290 F.R.D. 77, 81-82 (E.D. Mich.

22

2013) (quotation omitted). See also Fradkin v. Ernst, 98 F.R.D. 478,487 (N.D. Ohio 1983)

("[t]he Sixth Circuit has held that a class of 35 members is sufficient to meet the [numerosity]

requirement" (citing Afro Am. Patrolmen's League v. Duck, 503 F.2d 294, 298 (6th Cir. 1974).

Further, although no minimum number of class members is required, many courts presume

numerosity is satisfied where there are likely at least 40 potential class members. See Andrews

Farms v. Calcot, Ltd., 258 F.R.D. 640, 651 (E.D. Cal. 2009) (citing Consol. Rail Corp. v. Town

of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)) (noting that numerosity is generally satisfied

where there are at least 40 putative class members).

    The proposed Settlement Class here easily meets the numerosity requirement because  at

least 198 Settlement Class Members have been identified through third party pay and tax

records, delivery data, and other records obtained during discovery.

## 2.      The Settlement Class Seeks Resolution of Common Questions

    The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied where there are

questions of law or fact common to the class. Young v. Nationwide Mut. Ins. Co., 693 F.3d 532,

542 (6th Cir. 2012) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349, n. 5 (2011))

("To demonstrate commonality, the plaintiffs' 'claims must depend on a common contention …

of such a nature that it is capable of classwide resolution—which means that determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke.'").

    Here, Plaintiffs' and the Settlement Class Members' claims each arise from Defendants'

alleged joint employment of drivers and dispatchers performing work related to its long-term

care pharmacies in Kentucky. Most notably, questions of employment classification under

Kentucky's Wage Act, and whether all workers were paid in compliance with state wage laws,

are common to the class. It has been found that Kentucky's unique wage statute lends itself to

class-wide resolution. See In re FedEx Ground Package Sys., Inc., Employment Practices Litig. ("FedEx I"), 283 F.R.D. 427, 448 (N.D. Ind. 2008) (granting class certification to a Kentucky class of delivery drivers classified as independent contractors and holding that "none [of the Kentucky employment factors] require such individualized analysis as to make class certification inappropriate."). Further, class certification has been granted in cases involving similar expense reimbursement issues. See Brandenburg v. Cousin Vinny's Pizza, LLC, No. 3:16-CV-516, 2018 WL 5800594, at *2 (S.D. Ohio Nov. 6, 2018) (granting class certification in a delivery driver case where the Ohio state minimum wage claims involved the common issues of "the extent of delivery driver[s'] reimbursement for their expenses" and "whether the delivery drivers were adequately reimbursed for their delivery expenses").

Plaintiff has adequately shown that there are common questions of law and fact.[11]

### 3.    The Claims of the Named Plaintiff Is Typical of the Settlement Class

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied for purposes of preliminarily approving the settlement, because Plaintiff's claims are reasonably coextensive with those of absent Settlement Class Members, and because the claims arise from a single misclassification scheme and a single set of legal theories. See Young, 693 F.3d at 542 (citing Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998)) (typicality requires that "the representative's interests will be aligned with those of the represented group, and in pursuing his

---

[11]    While dispatchers and drivers did not share the exact same job duties, the legal injury that they suffered from being misclassified and deprived of overtime and reimbursements remains the same, which is sufficient for certification here, "[g]iven that the requirements for a settlement class are generally less onerous than those for a trial class." See In re Sears, Roebuck & Co. Front-Loading Washer Products Liability Litigation, 2016 WL 772785, at *8 (N.D. Ill. 2016). Moreover, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." Walburn v. Lend-A-Hand Servs., LLC, 2020 U.S. Dist. LEXIS 91853 (S.D. Oh. May 26, 2020), citing Groshek v. Great Lakes Higher Educ. Corp., No. 15-cv-143-jdp, 2016 U.S. Dist. LEXIS 125089, at *8 (W.D. Wis. Apr. 13, 2016).

own claims, the named plaintiff will also advance the interests of the class members."). Plaintiff's claims alleging misclassification and unpaid wages under Kentucky law are typical of the claims of the Settlement Class.

### 4.      Plaintiff's Counsel and Plaintiff Meet the Adequacy Requirements of the Settlement Class

To meet the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4), a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Young, 693 F.3d at 543 (citing Amchem Prod., Inc. 521 U.S. at 625–26). The adequacy of representation requirement is met here because Plaintiff has the same interests as the Settlement Class Members. There is no conflict between Plaintiff and the Settlement Class in this case, and Plaintiff's claims are in line with the claims of the class. Plaintiff has and will continue to assert the interests of the Settlement Class aggressively and competently, and Plaintiff's Counsel is skilled and experienced in wage and hour class action litigation.  See Lichten Decl. ¶¶ 3-7; Goodwin Decl. (Ex. 4) ¶¶ 3-7.

### 5.      The Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3)

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The predominance inquiry is about whether a "common question is at the heart of the litigation." Powers v. Hamilton County Public Defender Comm., 501 F.3d 592, 619 (6th Cir. 2007). "In discerning whether a putative class meets the predominance inquiry, courts are to assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole.' " Peck v. Air Evac

EMS, Inc., No. CV 5: 18-615-DCR, 2019 WL 3219150, at *4 (E.D. Ky. July 17, 2019), quoting

Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc., 863 F.3d 460, 468 (6th Cir.

2017).

     For the reasons discussed above, the Settlement Class satisfies the predominance

requirement. In addition, allowing the Settlement Class Members the opportunity to participate

in a class settlement that yields an immediate and substantial benefit is highly superior to having

a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the

alternative of leaving these important labor rights unaddressed due to the difficulty of finding

legal representation and filing claims on an individual basis. Indeed, this Court has recently

found that "a class action in this district appears to be the superior method to resolve the

[alleged] misclassification issue." Ware v. CKF Enterprises, Inc., No. CV 5:19-183-DCR, 2020

WL 2441415, at *10 (E.D. Ky. May 12, 2020) (preliminarily approving a Rule 23 class in

connection with a proposed settlement agreement).

    **E.**    **The Proposed Notice Provides Adequate Notice to the Settlement Class Members and Satisfies Due Process**

    The Supreme Court has held that notice of a class action settlement must be "reasonably

calculated, under all the circumstances, to apprise interested Parties of the pendency of the action

and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank &

Trust Co., 339 U.S. 306, 314 (1950); see also Phillips Petrol. Co. v. Shutts, 472 U.S. 797, 811-12

(1985) (provision of "best practicable" notice with description of the litigation and explanation

of opt-out rights satisfies due process); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 174-75

(1974) (individual notice must be sent to class members who can be identified through

reasonable means); see also Fidel v. Farley, 534 F.3d 508, 513 (6th Cir. 2008) (citing Fed. R.

Civ. P. 23(c)(2)(B)) ("[T]he court must direct to class members the best notice that is practicable

26

under the circumstances, including individual notice to all members who can be identified through reasonable effort.").

Here, the proposed Notice and manner of distribution negotiated by the Parties is "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B), and related FLSA case law. All Settlement Class Members will be identified in a class list prepared jointly by the Parties using the best available information, and the Notice will be sent to the last known address and email address of each Settlement Class Member (and to those addresses that the Settlement Administrator is able to find using reasonable investigatory methods and the assistance of counsel for the parties). The proposed Notice attached to the Settlement Agreement as Exhibit A is clear and straightforward and provides information on the terms and provisions of the Settlement Agreement, the monetary awards that the Settlement will provide to Settlement Class Members, including the allocation method, the scope of the release, the request for attorneys' fees and costs, the deadline for submitting Claim Forms, and the right to object to or opt out of the Settlement. See Agreement, Ex. 1 at ¶7 (see also Ex. A to Settlement Agreement ("Class Notice," explaining the right to opt out).

Accordingly, the Notice complies with the standards of fairness, completeness and neutrality required of a notice disseminated under authority of the Court, and should be approved.

## IV.    **CONCLUSION**

Based upon the foregoing reasons, the Parties respectfully request that the Court grant this Joint Motion for Preliminary Approval of the Settlement Agreement and enter the accompanying proposed Preliminary Approval Order.


Dated: September 11, 2020                    Respectfully submitted,

27

/s/ Harold L. Lichten
Harold L. Lichten (admitted *pro hac vice*)
Zachary L. Rubin (admitted *pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
zrubin@llrlaw.com


Thomas R. Goodwin (admitted *pro hac vice*)
Susan C. Wittemeier (admitted *pro hac vice*)
W. Jeffrey Vollmer (admitted *pro hac vice*)
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000
trg@goodwingoodwin.com
scw@goodwingoodwin.com


Michele Henry
Craig Henry PLC
239 South Fifth Street, Suite 1400
Louisville, KY 40202
(502) 614-5962
Facsimile: 502-624-5968
mhenry@craighenrylaw.com


*Counsel for Plaintiff*

/s/ James J. Swartz
James J. Swartz (Kentucky Bar No. 96939)
Nancy E. Rafuse (pro hac vice)
J. Stanton Hill (pro hac vice)
Andrew McKinley (pro hac vice)
jswartz@seyfarth.com
nrafuse@seyfarth.com
shill@seyfarth.com
amckinley@seyfarth.com
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056


*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on September 11, 2020 the foregoing was served electronically via CM/ECF, which will send a notice of electronic filing to all parties of record.

<u>/s/ Harold L. Lichten</u>
*Counsel for Plaintiff*