UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

DANIEL DAVIS, individually and on                    )
behalf of himself and all others similarly           )
situated,                                            )
                                                     )        No. 5:18-CV-142-REW
         Plaintiff,                                  )
                                                     )
v.                                                   )
                                                     )
OMNICARE, INC., et al.,                              )
                                                     )
         Defendants.                                 )

\*\*\* \*\*\* \*\*\* \*\*\*

## I.      MEMORANDUM OPINION AND ORDER APPROVING

Plaintiff Daniel Davis initiated this putative collective and class action against Defendant

Omnicare, Inc. and three of its subsidiary pharmacies.[1] Davis sues on behalf of himself and others

that performed delivery or dispatch services for Defendants. DE 1 at 4 (Complaint). Davis argues

that despite being designated as independent contractors, he and the other Drivers and Dispatchers

(collectively, Class Members) were in fact Defendants' employees. As employees, Davis

maintains that he and the other Class Members are entitled to unpaid wages, unlawful deductions,

and unreimbursed expenses. (DE 1; Complaint at 11-13). He now seeks compensation under the

Kentucky Wages and Hours Act (KWHA) and the federal Fair Labor Standards Act (FLSA). To

unite all Class Members into a single action, Davis also seeks to establish a class action under Fed.

R. Civ. P. 23 to pursue the KWHA claims and an FLSA collective to pursue the federal claims.

---

[1] Together "Defendants" or "Omnicare." Omnicare does not directly own Defendants Home
Care Pharmacy, LLC, D&R Pharmaceutical Services, LLC, or Three Forks Apothecary, LLC.
*See* DE 11-1, at 5 n.1. Rather, Omnicare wholly owns three subsidiaries that, themselves,
exclusively own the other named Defendants. *Id.* Omnicare now is itself a wholly owned
subsidiary of CVS Pharmacy, Inc. *Id.*

On September 11, 2020, after more than two years of sharply adversarial litigation, the Parties submitted a joint motion for settlement (and proposed agreed order (DE 128)) in which Defendants would provide a common settlement fund of $1,000,000 to settle federal and state claims held by members of the putative Rule 23 class and FLSA collective. DE 127-1 at 9-10. Settlement agreements involving an FLSA collective and/or Rule 23 class require judicial approval. *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 891 (6th Cir. 2019). In accordance with the requisite approval process for each, the Parties now seek 1) preliminary approval of the Settlement Agreement; 2) preliminary certification of the Rule 23 Settlement Class; 3) preliminary appointment of Plaintiff Daniel Davis as Class Representative; 4) preliminary approval of Goodwin & Goodwin, LLP, Lichten & Liss-Riordan, PC, and Craig Henry PLC as Class Counsel; 5) approval of the Notice of Settlement to Settlement Class Members; and 6) approval of the proposed schedule and procedure for the final approval of the Settlement Agreement. DE 127 at 5. For the following reasons, the Court **GRANTS** the motion on specified terms.

II.   Relevant Terms of the Agreement

*A. The Settlement Fund*

In the proposed settlement, Omnicare agrees to contribute one million dollars ($1,000,000) to a Gross Settlement Fund and to also pay half of the fees and expenses of the Claims Administrator in exchange for a full and final resolution of this litigation. DE 127-1 at 10-11. The Parties jointly describe the $1,000,000 settlement fund as fair and reasonable. DE 127 at 3. Before its distribution to any claimants, the $1,000,000 Gross Settlement Fund will be reduced by $333,333.33 in attorney's fees (DE 127-1 at 13); up to one-half of the litigation costs, which the Parties estimate to be $59,000.00 (*i.e.*, anticipated litigation cost is $118,000.00) (DE 127-1 at 41); one-half of the costs  for the Claims Administrator expenses (DE 127-1 at 16); $20,000 for the provisional Allocation Correction Set-Aside (DE 127-1 at 13); and $5,000 for the

2

Service Payment to Davis (DE 127-1 at 12).

The remaining Net Settlement Fund will be distributed to all class members who submit a valid Claim Form (otherwise known in the proposed agreement as the "Settling Plaintiffs"). DE 127-1 at 7, 11. The Net Settlement Fund will be distributed to all Settling Plaintiffs in two distinct pools, with a stipulated and uniform calculation for each: one for drivers and one for dispatchers. DE 127-1 at 11. Each class member can participate in only one pool. *Id.* at 39.

The Parties estimate that the driver specific pool of about $545,000.00 will go to approximately 192 class members that worked as delivery drivers. *Id.* at 11. Each driver's share will be proportionate to the relative percentage of miles she drove during the class period based on a formula developed by Plaintiff's expert. *Id.* at 11. Drivers who affirmatively opted-in to the FLSA prior to June 22, 2020 (a.k.a., Existing Opt-Ins, *see* DE 127-1 at 7) will have their settlement amount adjusted upward by a multiplier of 1.2. *Id.* The remaining funds in the Net Settlement Account—which the Parties anticipate will be around $25,000—will be distributed to the estimated twelve class members that worked exclusively as dispatchers. *Id.* Dispatcher payment will be proportionate to the relative number of weeks that dispatcher worked, although existing opt-in dispatchers will also get a 20% premium to their payment. *Id.* at 12.

Because payments will go only to class members that submit a valid Claim Form, the amount that each class member ultimately receives will depend on overall participation in the action. DE 127 at 3; DE 127-1 at 11. Assuming 100% participation, the highest share to a class member will be roughly $31,000 and the average share roughly $2,800. DE 127 at 4. At the projected participation rate of 70%, the average share increases to about $4,000.00. *Id.* Each participant is guaranteed a minimum payment of $100.00. DE 127-1 at 11.

In return, class and collective members will surrender some claims—although the exact

claims each member surrenders will depend on his participation in the settlement. Class members that participate in the settlement by submitting a valid Claim Form will surrender their state and federal claims, due to the FLSA opt-in requirement. *Id.* at 13-14. Class members that do not affirmatively participate but also do not affirmatively opt-out of the settlement will lose their KWHA claims (except those barred from waiver by law) but not their FLSA claims. *Id.* at 14; *see generally Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 545-46 (6th Cir. 2006) (describing the waiver of rights under FLSA collectives and Rule 23 classes).

## B. Notice

Within 30 days of preliminary approval, the Parties will provide the Claims Administrator (CA) with the best-known information about all Settlement Class Members. DE 127-1 at 19. Within 30 days of that, the CA will mail or email a notice of the Settlement, a consent and Claim Form, and an estimate of the amount of payment to all Settlement Class Members. *Id.* at 20; *see also id.* at 36-43 (Proposed Notice Form). Also, within 30 days of the CA's receipt of the Settlement Class Members' contact information, the Parties will jointly ensure publication of notice of the settlement in several newspapers with readerships in targeted geographic areas. DE 127-1 at 20.

Class members will then have 75 days from the form's mailing to submit a properly completed Claim Form. DE 127-1 at 20-21. This 75-day window is the Claim Period. *Id.* at 20. If a Class Member submits a deficient response, the CA will have 10 days to notify that person that he has the later of 10 days or the close of the Claim Period to remedy the defect. *Id.* at 21.

The notice also explains class members' right to object and the process for doing so. *Id.* at 24, 42 (Notice on Right to Object). In short, objection requires a Class Member to file with the Court and serve on listed counsel for both Parties a written statement describing the basis for the objection before the close of the Claim Period. *Id.* at 24. Failure to comply precludes the party

4

from speaking at the Final Approval Hearing and otherwise objecting to the agreement. *Id.* The Settlement Agreement also explains that any party seeking to opt-out of the Rule 23 Class must submit a qualifying request for withdrawal postmarked by the close of the Claim Period, at the latest. No party may opt-out after submitting a valid claim form. *Id.* at 25, 42.

III.   <u>Analysis</u>

When reviewing a proposed settlement agreement that resolves the claims of an FLSA collective and a Rule 23 class, a court first considers whether to conditionally certify the proposed collective and preliminarily certify the proposed Rule 23 class before proceeding to the question of preliminary approval of the agreement itself. *Ware v. CKF Enterprises, Inc.*, No. 5:19-CV-183-DCR, 2020 WL 2441415, at *10 (E.D. Ky. May 12, 2020).

A.   *Conditional Certification of the FLSA Collective*

Here, Davis alleges that Defendants failed to pay the drivers and dispatchers according to the mandates of the FLSA. DE 1 at 7; *see also* 29 U.S.C. §§ 201, *et seq.* Section 216(b) of the FLSA allows "similarly situated" employees to "opt-in" to collective actions against their employers for alleged FLSA violations. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1636 n.3 (2018). A collective action under the FLSA requires judicial approval of the proposed collective; in the Sixth Circuit, that process occurs in two-steps. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012).

At the first step, a court conditionally certifies the putative collective and then oversees the process of the parties' providing notice to putative collective members. *Comer*, 454 F.3d at 545-46. The standard for this stage is "fairly lenient." *Id.* at 547. After all putative collective members have had sufficient time to opt-in to the action, the reviewing court moves to the "stricter" second stage of the inquiry: a close examination of whether the "members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547; *see also Ware*, 2020 WL 2441415, at *5. Although the FLSA

5

does not define "similarly situated," courts at this stage look chiefly to whether the collective's members "suffer from a single, FLSA-violating policy" and that proof of either that policy "or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Abney v. R.J. Corman R.R. Grp., LLC*, No. CV 5: 17-260-DCR, 2017 WL 3723657, at *2 (E.D. Ky. Aug. 29, 2017).

> Here, Davis earlier sought conditional certification of an FLSA collective defined as:

> All current and former delivery drivers and dispatchers classified as independent contractors who performed work for Defendants and were based at a distribution center located in Ashland, Beattyville or Lexington, Kentucky during the three-year period before the filing of the Complaint up to the date the Court authorizes notice.

DE 51-1 at 5. The Court granted conditional certification to the proposed collective as it pertained to the drivers but rejected the inclusion of the dispatchers in that conditionally certified collective. *Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2019 WL 6499127, at *2-4, (E.D. Ky. Dec. 3, 2019). The reason for the rejection was that Davis, at that point at least, had "not shown that former Act Fast dispatchers are, with respect to the pending FLSA claims, similarly situated." *Id.*

In the settlement agreement now before the Court, the Parties propose an FLSA collective, the defined FLSA Settlement Class, DE 127-1 at 7, comprised of "the individuals who provided driver or dispatcher services to Defendants in Kentucky from December 3, 2016 through March 25, 2018." DE 127-1 at 7. For the following reasons, on the contested record and in the settlement context, the Court now finds dispatcher inclusion into the collective appropriate and therefore conditionally certifies the Settlement Agreement's proposed collective. The earlier proposed collective came during the fully adversarial stage of this litigation (*see, e.g.,* DE 51 (Motion); DE 55 (Response in Opposition)); the present proposal comes through negotiation, when all aspects of the case were on the table, and a proposed settlement agreement. "Courts should approve joint

settlement agreements of FLSA claims 'if a proposed settlement reflects a reasonable compromise over contested issues.'" *Senior v. Robert Newlin Airport, Inc.*, No. 3:18-1382, 2019 WL 4267488, at *2 (S.D. W. Va. Sept. 9, 2019) (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-CV-1310, 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009)); *see also Young v. Act Fast Delivery of W. Virginia, Inc.*, No. 5:16-CV-09788, 2020 WL 4805036, at *1 (S.D. W. Va. Aug. 18, 2020). The standard for that approval process is "relatively forgiving" and should reflect "the uncertainty of the litigation process" and legal and "factual disagreements." *Senior*, 2019 WL 4267488, at *2.

Although Defendants continue to deny Plaintiff's allegations (DE 127-1 at 3), the record provides sufficient reason to conclude that dispatchers and drivers are, within each subset, similarly situated. Plaintiff alleges that both were improperly classified as independent contractors, that both were under the *de facto* control of Defendants, that both were improperly denied overtime and proper wages due, and that both were subject to unlawful deductions from their pay. DE 51-1 at 10 ¶¶ 6,10; 11 ¶ ¶ 8,10 (Citing collected affidavits). The Complaint alleges, as detailed in the voluminous record and under a rational liability theory, that drivers and dispatchers, per class, all "suffer from a single, FLSA-violating policy" (*i.e.*, improper designation of employees as independent contractors) and proof of that policy would prove a violation "as to all the plaintiffs." *Abney*, 2017 WL 3723657, at *2. Further, this settlement likely represents dispatchers' last and best chance of securing any compensation. FLSA claims generally expire after two-years, and a maximum of three if the employer's violation was willful. *Kinder v. MAC Mfg. Inc.*, 318 F. Supp. 3d 1041, 1048 (N.D. Ohio 2018) (citing *McLaughlin v. Richland Shoe Co.*, 108 S. Ct. 1677, 1681

(1988)). Most or all FLSA claims accrued and within the collective would lapse if not so included. Accordingly, the Court conditionally certifies the proposed collective.[2]

### B.  Preliminary Certification of the Rule 23 Kentucky Class and Related Issues

Before a court preliminarily approves a proposed settlement agreement involving a Rule 23 class, it must first "preliminarily certify the class under Rule 23(a) and (b) of the Federal Rules of the Civil Procedure, appoint class counsel, and approve the class representative." *Ware*, 2020 WL 2441415, at *7 (quoting *Peck v. Air Evac. EMS, Inc.*, No. 5:18-615-DCR, 2019 WL 3219150, at *2 (E.D. Ky. Jul. 17, 2019)).

### 1.   The Class Definition

Preliminary certification of a class requires the proposed class's definition to be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Id.* (quoting *Young v. Nationwide Ins. Co.*, 693 F.3d 532, 637-38 (6th Cir. 2012)) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 23(c)(1)(B). Here, the Settlement Agreement's proposed Rule 23 class is made up of the approximately 200 "individuals who provided driver or dispatcher services to Defendants in Kentucky during time period February 19, 2013 through March 25, 2018, and who do not opt-out of the litigation." DE 127-1 at 8; *see also* DE 127 at 5.

The proposed class is sufficiently definite. The Parties have already used existing employment records to identify a large majority of envisioned Class Members. DE 127 at 4 n.5. Although those records are incomplete in minor part, the agreement provides for an investment in finding unidentified class members; notice will be posted in the relevant markets and funds set

---

[2] The Court further rejected the earlier collective for lack of detail on or advocacy regarding the dispatcher sub-group.  In the negotiated context, where the Parties have full access to the record and are negotiating at arms' length, the Court proceeds in a more deferential stance.  Further, the prior handling did not touch on state-law claims.

aside for the emergence of new Class Members. DE 127-1 at 19-20. Further, a person's membership in the class will hinge on knowable and demonstrable characteristics, namely whether that person provided specific services within an identified timeframe. Accordingly, the Court deems the proposed class sufficiently definite.

### 2. Preliminary Certification Under Rule 23(a)

Rule 23(a) requires the following of a proposed class:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are generally referred to as "numerosity, commonality, typicality, and adequacy." *Ware*, 2020 WL 2441415, at *7. For the following reasons, the proposed class merits preliminary certification under Rule 23(a).

For numerosity, "no strict numerical test exists." *Young,* 693 F.3d at 541 (citation omitted). A class of 35 can clear the hurdle. *Id.* at 542. However, "impracticability of joinder must be positively shown, and cannot be speculative." *Id.* (quoting *Golden v. City of Columbus,* 404 F.3d 950, 966 (6th Cir. 2005)). Here, the proposed class of roughly 200 people is sufficiently numerous. *See* DE 127 at 4. The impracticability of joinder for that scope class is clear and, therefore, the numerosity requirement met. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996).

Commonality exists if the plaintiff can show that the class members have suffered the same injury. *Walmart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* Instead, the class members' claims must share a "common contention" that is "capable of classwide resolution[.]" *Id*. A single determination as to that common contention's "truth or falsity will resolve an issue

that is central to the validity of each one of the claims in one stroke." *Id.* Here, all putative class members' claims share the same central and foundational liability contention: Defendants improperly designated Class Members as independent contractors, rather than employees, causing them financial harm via the manner and scheme of compensation and reimbursement. If true, the claims would likely succeed; if false, they would likely fail. Thus, the proposed class satisfies the commonality requirement. *Ware*, 2020 WL 2441415, at *8 (finding that a putative class satisfied the commonality requirement because all members' claims hinged on whether they were employees or independent contractors).

Next up is typicality, which "limit[s] the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n,* 100 S. Ct. 1698, 1706 (1980). Typicality measures the relationship between the injury to the named plaintiff and the injury to class members to see whether the named plaintiff's injury arose from the same conduct that harmed other class members. *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082. "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* (quoting Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3.13, at 3–76 (3d ed. 1992)). Here, the proposed class clears the typicality hurdle because all claims share the same scope, source, and legal theory: Class Members, while working on behalf of the same Defendants, were harmed by their improper designation as independent contractors rather than as employees, an alleged mis-designation that was a product of Defendants' employment policies, and that gives rise to claims under the KWHA and the FLSA. This area is highly contested on the merits, but typicality exists in the Rule 23 rubric.

The final requirement, adequacy of representation, has two criteria: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. General Motors Corp.*, 532 F.2d 511, 5252 (6th Cir. 1976)) (internal quotation marks omitted). Here, Davis has the same interest as the unnamed members of the class: securing owed compensation for past services rendered and wrongly withheld pay. Davis and his counsel have also diligently pursued the class's claims throughout this heavily contested dispute. They have engaged in substantial discovery and generated significant amounts work product. Plaintiff's counsel have substantial experience in the legal fields relevant to this dispute. Counsel from Lichten & Liss-Riordan, PC has spent 37 years as a labor and employment attorney and specializes in classification questions regarding employees and independent contractors. DE 127-3 at 2-3 (Declaration of Harold L. Lichten). Goodwin & Goodwin attorneys have extensive experience in similar class, collective, and mass tort actions—including serving as counsel in a similar dispute against Defendant Omnicare. DE 127-4 at 3; *see Young*, 2020 WL 4805036, at *5.

For these reasons, the Court finds that the proposed class, with Davis as its representative, satisfies the Rule 23(a) requirements.

### 3.   Preliminary Certification Under Rule 23(b)(3)

Rule 23(b) provides three potential forms of class action for a putative class that satisfies the four Rule 23(a) requirements. Here, the Parties seek preliminary certification under the third form, which requires the following for class approval:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see also Elliott v. LVNV Funding, LLC*, No. 3:16-CV-00675-RGJ, 2019 WL 4007219, at *5 (W.D. Ky. Aug. 23, 2019) (discussing the requirements of 23(b)(3)).

Here, Rule 23(b)(3) calls for preliminary approval of the proposed class. First, common questions of law and fact predominate over individual ones. Predominance requires consideration of the questions of law and fact that "qualify each class member's case as a genuine controversy . . . and assess whether those questions are subject to generalized proof, and thus applicable to the class as a whole." *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (citing *Amchem Prods., Inc. v. Windsor*, 117 S. Ct. 2231, 2249 (1997)). Here, the class members' claims arise from common questions of law and fact regarding Defendants' policy of employer/independent contractor designation as well as the unified and systematized manner of payment within each sub-class. Accordingly, the same generalized proof is likely to address each class member's claim. *See, e.g., Ware*, 2020 WL 2441415, at *10 (finding predominance under 23(b)(3) because "[t]he legal and factual issues of all putative class members involve[d] whether [defendant's] apparently contractual policy of classifying Kentucky consultants as independent contractors and paying them accordingly violated the KWHA because they were, in reality, employees").

A class action is also the best way to resolve the present dispute. First, as a general matter, a class action is this district's preferred method for adjudicating employee classification issues. *Id.* In addition, the apparent absence of similar suits lodged by other members of the putative class,

the substantial investment in discovery and work already made by Davis and his legal team, the adversarial (thus, well tested and litigated) nature of the proceeding thus far, and the geographical siting of the alleged harms in and around Eastern Kentucky all weigh in favor of recognizing the proposed class. *See id.* (noting, for similar reasons, the benefits of class action in a dispute involving an employee/independent contractor designation). Accordingly, the Court preliminarily certifies the proposed class for the purposes of settlement, which the Rule directly sanctions.

### 4.   Davis as Class Representative

The Parties jointly seek to establish Daniel Davis as the putative class's Class Representative. DE 127 at 5. Because a class representative carries significant power in resolving the claims of fellow class members, a court should ensure that a proposed representative will adequately represent that class. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013). Here, for the reasons already discussed, and assessing all conduct to date, the Court finds that Davis will adequately represent the class under Rule 23(a)(4) and therefore approves the request.

### 5.   The Plaintiff's Counsel as Class Counsel

A court must also appoint class counsel when certifying a class. Fed. R. Civ. P. 23(g)(1). Here, the Parties jointly seek preliminary appointment of Goodwin & Goodwin, LLP; Lichten & Liss-Riordan, PC; and Craig Henry PLC to serve as Class Counsel. DE 127 at 5. For the following reasons, the Court approves the request. When appointing class counsel, a court considers:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1)(A). That list is non-exclusive; the appointing court is free to consider any matter "pertinent to counsel's ability to fairly and adequately represent the interests of the

class." *Id.* (g)(1)(B). The most important concern is ensuring that counsel will fulfill its duty to "fairly and adequately represent the interests of the class." *Id.* 23(g)(4).

Here, and for reasons already addressed under the section on Rule 23(a)(4), proposed counsel are worthy of appointment because of the work they have put into raising and pursuing the class's claims and their expertise in the areas of law relevant to this dispute. *See, e.g.,* DE 127-3 at 2-3 (Declaration of Harold L. Lichten) (noting nearly 40 years of experience as a labor attorney); DE 127-2 at 2-4 (Declaration of Rebecca Shuford) (discussing efforts to develop estimates of class members' anticipated claims); DE 127-4 at 3 (discussing Goodwin & Goodwin's experience in class, collective, and mass tort actions); and DE 1 (showing Craig Henry PLC's early involvement in the litigation). *Ware*, 2020 WL 2441415, at *10 (granting preliminary appointment of class counsel on similar grounds).

### C. Preliminary Approval of the Proposed Agreement

With the FLSA collective conditionally certified and the Rule 23 class preliminarily approved, the Court now considers the requested preliminary approval of the proposed Settlement Agreement. *Ware*, 2020 WL 2441415, at *10. The review processes for preliminary approval of a settlement agreement under the FLSA and Rule 23 are similar, but not identical. *Id.* Both require the Court to evaluate whether the proposed agreement is fair, reasonable, and adequate. *Id.* at *11 (citing *Déjà Vu Servs.*, 925 F.3d at 894-99). However, preliminary approval under the FLSA also requires the reviewing court to establish the presence of a "*bona fide* dispute over [the] FLSA provisions." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982). Accordingly, the Court first reviews whether there is a *bona fide* FLSA dispute before turning to the fairness, adequacy, and reasonableness of the agreement.

14

1.   <u>Bona Fide Dispute over FLSA Provisions</u>

Employers and employees may not, of course, jointly agree to circumvent the FLSA. *Ware*, 2020 WL 2441415, at \*10. However, employers and employees may, in the context of an FLSA dispute, jointly propose a settlement agreement and submit that agreement to a federal district court for approval. *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-cv-299-JBC, 2008 WL 4724499, at \*2 (E.D. Ky. Oct. 23, 2008) (citing *Lynn's Food*, 679 F.2d at 1350). To properly accommodate both of those somewhat contradictory rules, it is incumbent on courts reviewing FLSA settlement agreements to ensure that the agreement is not an improper sale by employees of FLSA-established wage protections. Accordingly, courts use the presence of a genuine, adversarial process and dispute as indicia of the absence of collusion or coercion. *Ware*, 2020 WL 2441415, at \*10 (citing *Lynn's Food*, 679 F.2d at 1355); *Rakip v. Paradise Awnings Corp.*, 514 F. App'x 917, 919-20 (11th Cir. 2013).   A fair and tested resolution of a legitimate dispute over FLSA coverage and liability warrants approval.  *Senior*, 2019 WL 4267488, at \*2.

Here, the proposed agreement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. In the more than two-and-a-half years since Davis's initial complaint, the Parties have spent significant resources actively contesting all claim components, centering on whether drivers and dispatchers were or were not Defendants' employees. DE 1 (Complaint, dated 2/19/2018); DE 127 (Joint Motion for Settlement, dated 9/11/2020). Plaintiff supported his claim with numerous well-researched motions and memoranda, and Defendants have responded in kind. *See, e.g.,* DE 11 (Motion for Judgment on the Pleadings); DE 51 (Motion for Conditional Certification); DE 55 (Response in Opposition to DE 51 Motion). The case has been through the motion to dismiss stage, an initial collective certification stage, and was primed for dueling certification and decertification fights at the time of settlement.  Seemingly, every inch of ground has involved combat, and the case result (as to employee status, as to Defendants' operative

policies, as to proper calculative mechanics) was very unpredictable and unknowable when the mediation occurred.  This is a bona fide dispute. *Ware,* 2020 WL 2441415, at *11 (finding that a contested, protracted legal fight over the question of employee or independent contractor designation constitutes a bona fide dispute); *see also Lynn's Food*, 679 F.2d at 1354 (finding that the absence of an employee-originated lawsuit weighed against a finding of a bona fide dispute).

2. <u>Fairness, Reasonableness, and Adequacy of the Settlement under the FLSA and Rule 23</u>

As noted, preliminary approval of a settlement agreement involving an FLSA collective or a Rule 23 class requires the reviewing court to conduct essentially the same analysis on whether the agreement is fair, adequate, and reasonable. *Ware*, 2020 WL 2441415, at *11  (citing *Déjà Vu Servs.*, 925 F.3d at 894-99). The fairness, reasonableness, and adequacy of a settlement is measured by the seven factors identified in *International Union, UAW, et al. v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"). *Déjà Vu Servs., Inc.*, 925 F.3d at 894. The UAW factors are:

> the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest.

*Ware*, 2020 WL 2441415, at *11 (quoting *Déjà Vu Servs.*, 925 F.3d at 894-95) (internal citations omitted). Of those factors, likelihood of success is the most important and "warrants discussion before the others." *Id.*

#### a.  The UAW Factors
i.      Likelihood of Success on the Merits

This "most important" factor balances the plaintiff's chances of success on the merits against the relief offered by the settlement. *Id.* When considering this factor, the Court must be mindful of the Rule 23 class members whose claims will be extinguished without any active

participation on their part. *Id*. The court's treatment of this question in *Ware* is instructive here given that the *Ware* court was also confronting a dispute over whether a group of plaintiffs were employees improperly and detrimentally designated as independent contractors. *Id*. at *1.

When considering the *Ware* plaintiffs' likelihood of success on the merits, the court noted the inherent challenge in predicting the outcome of the FLSA claim because of the FLSA's "strikingly broad" definition of employee. *Id*. at *12. Under the FLSA, employees are distinguished from independent contractors through a six-factor "economic reality" test, which factors:

> (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; ... (5) the degree of the alleged employer's right to control the manner in which the work is performed ... and (6) whether the service rendered is an integral part of the alleged employer's business.

*Id*. (quoting *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019)). No single factor is independently determinative. *Acosta*, 915 F.3d at 1055.  Instead, each is considered in the context of whether it suggests that the person is economically independent from or dependent on the alleged employer. *Id.*  This analysis has threaded through the entire case.

Here, as in *Ware*, some factors appear to weigh in favor of the claim that the drivers and dispatchers were Defendants' employees. The services the drivers and dispatchers performed were integral to Defendants' delivery operations. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 815 (6th Cir. 2015). So too does the drivers' and dispatchers' relative lack of specialized training and investment in specialized equipment. *Acosta*, 915 F.3d at 1056.

But, also as in *Ware*, employee designation is hardly a foregone conclusion. As noted by Defendants, the extent to which Act Fast—a separate legal entity—stood between Class Members

17

and Defendants weighs sharply against Plaintiff's cornerstone claim. *See, e.g.,* DE 55 at 3. According to Act Fast's Lexington manager of delivery services, it was Act Fast that assigned routes to drivers, determined their schedules, disciplined drivers, and managed the drivers' and dispatchers' payrolls. *Id.* at 4-5 (citing DE 55-2 (Brumagen Dep.)). Also weighing against Plaintiff: at least some drivers were apparently performing delivery services for other Act Fast Customers at the same time they were ostensibly driving for Omnicare. DE 55 at 3 (citing DE 55-1 at 164:13-165:4). These are just some of the issues in the mix on the hotly fought FLSA coverage and liability topics.

Accordingly, the likelihood of success on the merits for the FLSA claim is unclear. Same too for the KWHA claim raised via the Rule 23 class. Plaintiff, carrying the burden to prove Class Members' status as covered "employees" under Kentucky state wage laws, would have to overcome the burdens already noted (Act Fast's placement in between the Parties; drivers' work for other companies) and the other sub-issues the pleadings and motion practice reveal. All of this signifies risk and indeterminacy, things that obviously affect the reasonableness of a brokered result. The class and collective members faced a daunting gauntlet of hurdles, and that contributes to the reasonableness of an arms' length, risk reflective settlement.

Further tilting this factor in favor of settlement, likelihood of success is not considered in isolation. It is balanced against the relief offered by the agreement. *Ware*, 2020 WL 2441415, at *11 (citing *Déjà Vu Servs.*, Inc., 925 F.3d at 894). Here, the agreement appears to offer all parties a sure and tangible improvement from the status quo. The Settlement Agreement promises to release more than a half million dollars to affected drivers and dispatchers to settle claims that have otherwise (outside this case) been sparsely or not litigated and are fast expiring (if not already time-barred). *Kinder*, 318 F. Supp. at 1048. Class counsel estimates that the proposed agreement

18

would be roughly 45% of single damages (at an estimated 80% participation rate.) DE 127-3 at 6. Conversely, were Defendants to successfully demonstrate that Act Fast is the true employer here, claimants would receive nothing. *Id.* As noted by Plaintiff's counsel, the present settlement offers an attractive certainty of compensation for class members, compensation otherwise debatable and attainable only after a protracted and hazardous journey over difficult legal terrain. A failure to settle now could lead those class members to recover less or nothing. DE 127-4 at 4. Accordingly, this first and critical factor weighs in favor of granting the proposed agreement.

### ii.     Risk of Fraud or Collusion

Here, the presence of a *bona fide* dispute (as discussed above) and the absence of any evidence of improper fraud or collusion pulls the second UAW factor in favor of granting the agreement. *Crawford*, 2008 WL 4724499, at *6. The Parties, after adversarial litigation, reached through mediation an agreement that would benefit both sides. Accordingly, the Court finds this factor weighs in favor of granting the proposed settlement agreement.  There is utterly no reason to doubt the separateness and proper advocacy of the participants.

### iii.     The Complexity, Expense, and Likely Duration of the Litigation

The present dispute involves roughly 200 drivers and dispatchers alleging related but distinct state law and federal law claims pursued through joint actions in the form of a Rule 23 class and its lesser included FLSA collective. "The Sixth Circuit has noted the complexity of cases involving overlapping FLSA collective and state law class action claims." *Ware*, 2020 WL 2441415, at *14 (citing *Déjà Vu Servs.*, 925 F.3d at 898). Denial of the proposed settlement would ensure further and extended litigation of this complex dispute at great expense to both Parties. COVID-19 caused backlogs would only delay proceedings further. Accordingly, this factor calls for approval.

### iv.     The Amount of Discovery Completed

As this matter's sizable docket attests, the Parties here have engaged in a considerable amount of discovery in the past two+ years. DE 127 at 3. *See, e.g.* DE 77 – 85 (Notices of Deposition); DE 117 (Exhibits); DE 127 at 3 (discussing scope of the Parties' record review and the work done by experts to investigate the validity of the claims and potential benefits). Accordingly, this factor too weighs in favor of approval.  The experts' participation and competing roles, all built on a foundation of discovery-based proof, further supports this finding.

### v.     The Opinions of Class Counsel and Class Representatives

Class counsel—whose experience and expertise in this area have already been noted—unanimously support the agreement. *See e.g.* DE 127-4 at 4 (Statement of Thomas Goodwin); DE 127-3 at 6 (Statement of Harold Lichten). So too does Davis. DE 127 at 1; DE 127-1 at 33. Accordingly, this too weighs in favor of approval.

### vi.     The Public Interest

The final UAW factor also calls for approval. "Settlement is the preferred means of resolving litigation." *Ware*, 2020 WL 2441415, at *14 (quoting *Crawford*, 2008 WL 4724499, at *9). The choice before the Court is whether to preliminarily approve a hard-won agreement between the Parties that would resolve the claims and provide compensation to class members or to deny the proposed agreement and send the Parties back to pre-agreement status quo and continued class and collective litigation that is "notoriously difficult and unpredictable[.]" *Déjà Vu Servs.*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Granting the proposed settlement carries the added benefit to the public of conserving judicial resources. *Id.*

Further, the factors that would call for rejection of a proposed settlement agreement of a collective or class action are not present here. There is no evidence of collusion, improper conflicts

of interest, or anything that would suggest that the parties here are improperly bargaining around the requirements of state and federal wage laws. Nor is there evidence of a clear or incontestable violation of those laws; Defendants have continuously denied the fundamental premise of Plaintiff's complaint and Plaintiff's likelihood of success on the merits is hazy. All parties see the proposed settlement agreement as a rational improvement to the status quo. Accordingly, public interest also calls for preliminary approval of the agreement. *Ware*, 2020 WL 2441415, at *14.

Therefore, in accordance with the *UAW* factors, the Court finds the proposed settlement agreement to be fair, reasonable, and adequate and therefore grants the requested preliminary approval.

### b. *Additional Rule 23(e)(2) Factors*

Rule 23(e)(2) provides its own supplemental factors used to evaluate a settlement agreement's fairness, reasonableness, and adequacy. *Id.* at *15. Several of those factors have already been discussed; the Court will not repeat those again now (*e.g.*, adequacy of class counsel and the class representative's representation; existence of an arm's length negotiations).

However, other factors do now merit review. One is whether the relief provided is adequate in light of:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3)

Fed. R. Civ. P. 23(e)(2)(C). Relevant to (i) and (ii), respectively, the costs of continued litigation here are high and delay for trial would be considerable (particularly given ripples from COVID-19) and the joint settlement agreement proposes a comprehensive scheme to identify and provide class members with their checks. DE 127-1 at 19-20 (discussing methods to identify claimants).

When evaluating proposed attorney's fees under (iii), the watchword is reasonableness. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ("[A]wards of attorney's fees by federal courts in common fund cases [need only to be] be reasonable under the circumstances."). Reasonableness is measured by:

> (1) the value of the benefit rendered to the plaintiff class [ ]; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) (discussing the factors governing the reasonableness of fee awards in a class action); *Ware*, 2020 WL 2441415, at *15-16. Here, the Parties seek an award of one-third of the Gross Settlement Fund. DE 127 at 9. As a threshold matter, an award of one-third of a gross-settlement fund is consistent with other, similar awards. *Ware*, 2020 WL 2441415, at *15-16 (finding an attorney fee award of roughly $200,000.00— equal to one-third of the common fund—to be "reasonable for the purposes of Rule 23" and in line with other fee awards in "similar complex failure-to-pay overtime cases"). However, courts in the Sixth Circuit have shown reluctance to award fees exceeding one-third of a common settlement fund. *Id.* (collecting cases). Thus, as a percentage of the settlement, the proposed fee is at the upper limits of, but still within, the bounds of reasonableness.

The request is also consistent with factors articulated in *Bowling*, 102 F.3d at 777. Plaintiff's Counsel Harold Lichten conservatively estimates investment of more than 2,200 attorney hours into this case. DE 127-3 at 7. The record squares with that level of work; Plaintiff's counsel put substantial effort and expertise into this dispute. *See, e.g.,* DE 51; DE 118; DE 111; DE 127. Because of that effort, roughly a half-million dollars will be distributed to approximately

200 class members. Given the complexity of the underlying subject matter, the inherently risky, prospective nature of counsel's involvement, and the extent to which this sort of litigation reinforces statutory wage protections, society has an interest in ensuring that the attorneys who work on these sorts of suits are, when warranted, properly compensated for their efforts and risk. These factors also weigh in favor of reasonableness. Notably, the award treated as an hourly measure, based on the factors presented (award divided by hours), would be a modest $150 per hour.

Finally, Rule 23(e)(2) requires consideration of any existing agreements ancillary to the one under review ((e)(2)(C)(iv)) and whether the proposed agreement treats class members "equitably relative to each other." Rule 23(e)(2)(D). Here, there are no apparent side agreements to address. The agreement also treats all class members equitably, under defined mechanics and formulae. The driver settlement pool will distribute approximately $545,000 to roughly 190 drivers—an estimated average rate of $2,800 per driver. DE 127-1 at 11. The dispatcher pool will distribute $25,000 among 12 people—an estimated average rate of a little over $2,000 per person. *Id.* Each specific calculation will hinge on variables particular to a participant as included in a set formula for the sub-classes of driver and dispatcher—the same formula applies per sub-class, and the claimant's characteristics will explain the differing levels of precise compensation. Although there is some disparity there, it does not appear to rise to the level of inequity, especially since based on empirical differences. Except for the service award to Davis and the 20% premium for those who opted into the action prior to June 22, 2020 (pre-settlement), each claimant's award is calculated equitably based on the miles that person drove (in the case of drivers) or the number of weeks that person worked (in the case of dispatchers) relative to the salient group. *Id.* at 11-12. On these facts, the Court sees no basis under Rule 23(e)(2) to reject the proposed agreement.

*c.   Other Issues Relating to Preliminary Approval*
i.      Attorney's Fees & Costs

"An award of attorney fees to a prevailing plaintiff under [29 U.S.C. § 216(b)] of the FLSA is mandatory, but the amount of the award is" within the judge's discretion, so long as it is reasonable. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). As discussed above in the context of Rule 23(e)(2), the proposed award of one-third of the gross settlement fund is reasonable given the awards in prior similar actions, the complexity of this litigation, and the public interest in incentivizing attorneys to take on the risk of pursuing actions for alleged wage violations. The same reasoning applies in the FLSA context. *Ware*, 2020 WL 2441415, at *17 (citing *Déjà Vu Servs.*, 925 F.3d at 898). There is no evidence that the award is the product of fraud or collusion. *Déjà Vu Servs., Inc.*, 925 F.3d at 897. Accordingly, the proposed fee, considered in isolation, is reasonable.

Here, the proposed settlement agreement would also allow Class Counsel to recoup up to one half of their litigation costs and expenses from the Gross Settlement Fund. DE 127 at 9. "Like attorney's fees, an award of costs to prevailing parties is mandatory under the FLSA." *Ware,* 2020 WL 2441415, at *17 (citing § 216(b)).   The Court finds the expense provision, estimated at $59,000, approvable as a preliminary matter.   The Court will review the precise and documented components as part of consideration of final approval, but counsel essentially is forgoing ½ of the invested expenses in securing the settlement.   Not approving the stipulated expense amount would erode the attorney fee value in a way that would not reflect the proper balance of risk, reward, and class benefit, relative to counsels' role, in this context.   As such, subject to final review and approval, the Court finds the compensation and reimbursements anticipated (not to exceed the estimate) reasonable in this case.

### ii.      Service Award

The Parties also jointly propose a $5,000.00 Service Award to Class Representative and Named Plaintiff Daniel Davis as compensation for his role in bringing the suit to fruition and completion. DE 127-1 at 12. "Courts within the Sixth Circuit have looked at several factors when determining whether to approve service incentive awards[.]" *Ware*, 2020 WL 2441415, at *17. Those factors include the action taken by the class representative in furtherance of the other class members' interests, whether that action was substantially beneficial to class members, the amount and nature of risk borne by the class representative, and the time and effort expended by the representative in furtherance of the suit. *Id.* (collecting cases). The service award is not intended as a "mere bount[y]" payment for a named plaintiff who makes little effort and takes on little risk. *Id.* (collecting cases).

Here, the proposed $5,000.00 service award for Davis is appropriate. Davis has been a party to this dispute for more than two-and-a-half years. All class members stand to benefit from this suit and may not have received anything if Davis had not taken this initiative and endured the lengthy pre-settlement litigation. In putting his name forward, Davis also arguably put his future employment opportunities and his perception as an employee in the marketplace at risk. Accordingly, the proposed service award is appropriate.

### iii.      The Cy Pres Beneficiary

Checks to class members that remain uncashed after one year of their receipt will be cancelled—unless that class member properly requests a new check. DE 127-1 at 12. The remaining funds would then go to Kentucky Legal Aid, the designated *cy pres* beneficiary. *Id.* Here, as in *Ware*, the *cy pres* beneficiary will receive only the *de minimis* remainder left by class members' uncashed checks. *Ware*, 2020 WL 2441415, at *18. Class members will receive notice

of this arrangement and adequate opportunity to avoid a lapse in payment. DE 127-1 at 39. Accordingly, the Court approves KLA's designation as the *cy pres* beneficiary.

iv.      Approval of the Notices and the Notice Process

The settlement approval processes for a Rule 23 class and an FLSA collectives both require notice to go to putative class/collective members once the agreement is preliminarily approved. *Ware*, 2020 WL 2441415, at *18. Accordingly, the Parties also seek approval of the Notice to Settlement Class Members.  DE 127 at 5. The Court assesses the request by reviewing whether the draft proposed notice and mechanics (DE 127-1 at 36-41) meet the specific and distinct requirements for notice set by the FLSA and Rule 23. *Ware*, 2020 WL 2441415, at *18

Under the FLSA, notice goes out after a court conditionally approves a putative collective. *Id.* at *5; *see also Comer*, 454 F.3d at 545. Notice provided under the FLSA must be "timely, accurate, and informative." *Williams v. King Bee Delivery, LLC*, No. 5:15-CV-306-JMH, 2017 WL 987452, at *7 (E.D. Ky. Mar. 14, 2017) (quoting *Hoffman-LaRoche v. Sperling*, 110 S. Ct. 482, 484 (1989)).

The notice requirements for a Rule 23(b)(3) class are "more extensive." *Ware*, 2020 WL 2441415, at *18. There, given the due process concerns raised by settlements, "notice must be reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008) (internal quotation marks and citations omitted). Rule 23(c)(2)(B) further requires that notice of a Rule 23(b)(3) settlement be "the best notice that is practicable under the circumstances" and also "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;

26

      (vi) the time and manner for requesting exclusion; and

      (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Ware*, 2020 WL 2441415, at *18. Here, the proposed notice makes clear to recipients that they are entitled to money, the reason, and that their rights are affected by the contents of the notice. DE 127-1.  It almost immediately establishes the definition of the class: drivers and dispatchers working for Defendants through Defendants' subcontractor Act Fast Delivery of Kentucky, that were classified as independent contractors. DE 127-1 at 36. The nature of the action and its claims and issues are accurately spelled out in the Introduction and "What is this Case About" sections at the top of the second and third pages of the notice. DE 127-1 at 37.  The binding effect of the class judgment, and the effect of that judgment on parties' rights, is described as well. DE 127-1 at 41 ¶ 7. The notice also informs class members of their right to opt-out and the process for requesting exclusion. DE 127-1 at 37 ¶ 9. However, the proposed Notice does not appear to clearly notify class members that they may enter appearances through an attorney if they desire, pursuant to Rule 23(c)(2)(B)(iv).  The Parties shall ensure inclusion of that requirement.

      Although the Parties jointly stipulated that the Settlement Agreement controls when inconsistencies between the Notice and the Agreement arise, *see* DE 127-1 at 32, the Court requires resolution of any obvious discrepancies within the Notice. *See* DE 127-1 at 1–34 (Settlement Agreement); DE 127-1 at 35–43 (Notice Form).

      First, the Notice Form states that "[i]n the event there are no records of your miles driven or weeks worked, you will be apportioned a reasonable approximate share of the settlement fund based on the aggregate data available." *Id.* at 39. However, the Notice Form retains the aggregate calculation only for miles driven. *See id.* at 40–41. The Settlement Agreement only confirms that "average mileage per delivery" will be used for those in the Driver Settlement Pool. *Id.* at 12.

Critically, the Settlement Agreement states that "[t]o the extent the information described above or necessary to calculate a Settling Plaintiff's distributive share is unavailable, the Parties will *assign the minimum recovery of $100* to such Settling Plaintiff[.]" *Id.* This suggests that for drivers without data, $100 will be the payment. The Notice should accurately reflect the Agreement's terms.

Second, the Notice Form leaves blank the approximate dollar amount and Class Member size for the Driver Settlement Pool and Dispatcher Settlement Pool. *Id.* at 40. However, the Settlement Agreement provides for approximate numbers for both pools. *Id.* at 11. The Parties should ensure that those numbers are entered into the Notice Form.

Third, the Notice Form and the Settlement Agreement both allow for an individual to submit a dispute to the Claims Administrator if the individual believes that the miles driven or weeks worked is incorrect in the Notice Form. *Id.* at 23, 40. The Notice Form states that the dispute must be received by a certain date. *Id.* at 40. The Settlement Agreement, however, does not set a timeline. *Id.* at 23. Curiously, this is the only timing issue between the two forms that does not have some sort of trigger. The Parties shall ensure a fair period (no less than 30 days from mailing of notice to a Class Member) for notification to the Claims Administrator that the Class Member contests details of the calculation in the Notice.

Finally, the Notice Form states that an individual who wishes to object to the settlement "must submit an objection" and that the objection "should be mailed to the Claims Administrator at the address provided above." *Id.* at 42 ¶ 8. Critically, the Settlement Agreement disagrees with this procedure and states that the "Settlement Class Members *must file with the Court and serve on Counsel for the Parties*" the objection. *Id.* at 24 (emphasis added). For clarity, and to ensure that Settlement Class Members may appropriately object, this discrepancy must be addressed.

Of course, the Court expects the Parties to fill in date blanks and other precise details consistent with this approval and the Settlement Agreement.

> ### d.   Approval of the Proposed Schedule & Procedure for Final Approval of the Settlement Agreement

Finally, the Parties seek approval of the proposed schedule and procedure for final approval of the Settlement Agreement. DE 127 at 8. The mechanics of that proposed process are laid out in the agreement. DE 127-1 at part 7.C.  The Court finds the dates and mechanics compliant with requisites of law.  The Parties will also ask the Court to schedule and conduct a Final Approval hearing and to grant final approval to the settlement agreement according to the minimum timeline laid out in 28 U.S.C. § 1715 (and no earlier than 120 days after the date of the Court's preliminary approval). DE 127-1 at 17.   The Parties shall file a status report in seventy (70) days reporting on progress and requesting assignment of the final hearing date, which shall tentatively be approximately sixty (60) days following the filing of the report.  The Parties will be required to provide notice of the final date to all Class Members.

## IV.   Conclusion

Accordingly,

1.  Preliminary certification of the Rule 23 Class as defined in the proposed Settlement Agreement is **GRANTED**; and

2.  The FLSA collective (as defined in the Settlement Agreement) is **CONDITIONALLY CERTIFIED**; and

3.  The request to preliminarily appoint Plaintiff Daniel Davis as Class Representative is **GRANTED**; and

4.  Plaintiff's counsel (as identified in the Settlement Agreement) are **PRELIMINARILY APPOINTED** as Class Counsel; and

5.   The appointment of Kentucky Legal Aid as the *cy pres* beneficiary is **PRELIMINARILY APPROVED**; and

6.   The request for attorney fees and expenses is **GRANTED** as stated;

7.   This terminates by **GRANT** DE 127 & terminates DE 128; and

8.   The request for approval of the Proposed Notice to the Settlement Class Members, and the proposed schedule and procedure for the final approval is **GRANTED,** though on the stated terms, which require noted conforming corrections and modifications to the draft notice.

This the 30th day of March, 2021.

**Signed By:**

*Robert E. Wier*

**United States District Judge**