UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| DANIEL DAVIS, individually and on behalf of himself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | No. 5:18-CV-142-REW |
| v. ) ) | OPINION & ORDER |
| OMNICARE, INC., et al., ) ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

## I.  MEMORANDUM OPINION AND ORDER GRANTING FINAL APPROVAL

After a contested period of litigation, the parties jointly move for final certification of the Rule 23 class and the FLSA collective, and final approval of the proposed settlement agreement. DE 133. The Court, having reviewed the motion and having conducted a Final Hearing (to include fairness assessment), finds the agreement fair, reasonable, and adequate. Further, the FLSA collective and Rule 23 Class warrant final certification. The other sought approvals also are proper. The Court **GRANTS** the DE 133 motion.[1]

## II.  Background

Davis initiated this putative collective and class action against Defendant Omnicare, Inc. and three of its subsidiary pharmacies. Davis sues on behalf of himself and others that performed delivery or dispatch services for Defendants. DE 1 at 4 (Complaint). *See also Davis,* 2021 WL 1214501, at \* 1. Relevant here is that, on September 11, 2020, after more than two years of sharply

---

[1] The Court also incorporates the reasoning and analysis in the previous preliminary approval order. *See Davis v. Omnicare, Inc., et al.,* 2021 WL 1214501 (E.D. Ky. Mar. 30, 2021).

1

adversarial litigation, the Parties submitted a joint motion for settlement approval (and proposed agreed order (DE 128)) in which Defendants would provide a common settlement fund of $1,000,000 to settle federal and state claims held by members of the putative Rule 23 class and FLSA collective. DE 127-1 at 9-10.

Settlement agreements involving an FLSA collective and/or Rule 23 class require judicial approval. *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 891 (6th Cir. 2019). In accordance with the requisite approval process, the parties jointly sought: 1) preliminary approval of the Settlement Agreement; 2) preliminary certification of the Rule 23 Settlement Class and FLSA collective (both, for settlement); 3) preliminary appointment of Plaintiff Daniel Davis as Class Representative; 4) preliminary approval of Goodwin & Goodwin, LLP, Lichten & Liss-Riordan, PC, and Craig Henry PLC as Class Counsel; 5) approval of the Notice of Settlement to Settlement Class Members; and 6) approval of the proposed schedule and procedure for the final approval of the Settlement Agreement. DE 127 at 5. The Court granted preliminary certification of the Rule 23 class; conditionally certified the FLSA collective; granted the request to preliminarily appoint Daniel Davis as class representative; preliminarily appointed Plaintiff's counsel as class counsel; preliminarily approved the designation of Kentucky Legal Aid as the *cy pres* beneficiary, and granted the request (pending conforming amendments) to the proposed notice to Settlement Class Members and the proposed schedule and procedure for final approval. *See Davis*, 2021 WL 1214501, at *13-15. The Court made all predicate rulings necessary to ready the case for final resolution.

Pursuant to that Order, the parties made the modifications as the Court directed (*see* DE 130; 131) and the agreed upon settlement administrator, Rust Consulting, set about identifying and

2

contacting class members. *See* DE 133-1 (Pavlik Decl.).[2] On April 9, 2021, the Class Action Fairness Act (CAFA) Notice and corresponding Class List was mailed to the offices of all fifty state attorney generals, the United States Attorney General; and the office of the Kentucky Secretary of State. DE 133 at 6; *see also see* 28 U.S.C. § 1715. On June 1, 2021, the Settlement Administrator sent the Class Notice to 183 Class Members. DE 133 at 6. That same day, the Settlement Administrator also opened a website for Class Members to submit their claims electronically. *Id.* Notice of the settlement was also published appropriately in the Lexington Herald Leader (June 1-3, 2021), the Ashland Daily Independent (June 2-4, 2021), and the Beattyville Enterprise (June 2, 9, and 16, 2021). DE 133 at 6.

At the time of the parties' joint motion for final approval, the Settlement Administrator had received 89 (supplemented to 91) Claims forms—amounting to roughly 44% (supplemented to 45%) of all known Class Members whose collective claims aggregate to nearly 75% of the funds allocated for distribution to claimants. *Id.* The parties also state that 43 of the individuals who did not respond (roughly 21% of the known class) would have been entitled to only $100 (the minimum payout). *Id.* at 8; *see* DE 133 at 6, 19. In total, the participating settling class members will share a total payout of roughly $560,000, with $535,000 (95%) going to the claimants from the participants from the 192 Settlement Class Members who worked as delivery drivers. *Id*. Consistent with the conditionally approved proposal, the delivery drivers will be paid based on the number of miles that the claimant drove during the class period relative to the class-wide total adjusted mileage as calculated by Plaintiff's expert (with negotiated and approved modifications to account for class members who were also FLSA opt-in members and drivers whose mileage calculations are unavailable). DE 133 at 19. About $25,000 will go to participants from the

---

[2] Updated by her declaration filed at DE 136.

3

approximately twelve class members who worked as dispatchers only. DE 133 at 20. Based on the submitted claims forms, the average settlement award is more than $4,600, fifty-five (55) participants will receive more than $1,000 and the highest single payout will be more than $31,000. Davis will receive a $5,000 service award. *See* DE 133 at 20-22. The Pavlik supplement details the payouts.  DE 136-1.

The scope of release is tailored so that settlement class members and existing opt-ins release their state and federal claims arising only from the facts alleged in this complaint for the period of February 19, 2013 through March 25, 2018. DE 133 at 21. Class members who do not submit a valid claim form and do not opt-out of the settlement release only their state law claims from the February 19, 2013 to March 25, 2018 window. DE 133 at 21. *See also Davis*, 2021 WL 1214501, at *2 (discussing claim release in this FLSA collective/Rule 23 class).  The release scope is properly circumscribed.  Plaintiffs' counsel, consistent with the contingency fee agreement, seeks $333,333.33 in attorneys' fees—equal to one-third of the Gross Settlement Amount. DE 133 at 24, 27. Counsel separately seek $59,500 in reimbursement for one-half of their litigation fees and expenses (which they estimate as $119,000) from the Gross Settlement Fund. *Id.*

### III. Relevant Terms of the Agreement

*Final Certification of the FLSA Collective*

Section 216(b) of the FLSA allows "similarly situated" employees to "opt-in" to collective actions against their employers for alleged FLSA violations. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018). A collective action arising under the FLSA requires judicial approval of the proposed collective; in the Sixth Circuit, that process occurs in two-steps. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). Here, the Court conditionally certified the proposed FLSA collective in its March 30, 2021 Order. *See Davis*, 2021 WL 1214501, at *15.

The question is now whether final certification is merited under step two. As a general matter, the Court applies a "stricter standard" at this stage and "more closely examine[s] 'the question of whether particular members of the class are, in fact, similarly situated.'" *White*, 699 F.3d at 877 (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). The FLSA standard is "less stringent than Rule 23's criteria for class certification." *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 5087766, at *4 (E.D. Ky. Aug. 26, 2020) (citing *O'Brien*, 575 F. 3d at 586). "In cases involving settlement of FLSA collective actions, where conditional approval has been granted and certification is uncontested, courts in and out of the Sixth Circuit favor final approval." *Id.* (citing cases).

Here, final certification is not contested. The Parties jointly stipulate for settlement purposes that Plaintiffs and Opt-in Plaintiffs are similarly situated because "they had substantially similar job requirements, worked for Omnicare in Kentucky via the same courier company, Act Fast, and were all classified as independent contractors and required to perform work without overtime compensation and without being reimbursed for all work expenses. Moreover, they were all subject to the same (or similar) allegedly unlawful payroll deductions." DE 133 at 8. For the motion stated reasons, and as discussed previously, the Plaintiffs here suffered from the same alleged FLSA-violating policies and are therefore similarly situated, thus warranting final certification at step two. *See Davis*, 2021 WL 1214501, at *4 (discussing fact that members suffer from the same alleged FLSA-violating policies of non-payment of overtime compensation, non-

5

payment of qualifying reimbursements, and payroll deductions); *see also Ware*, 2020 WL 5087766, at *4 (certifying, at step two, a collective made up of plaintiffs "unified by [the] common theory" of defendant's failure "to pay time-and-a-half to consultants"). Accordingly, final certification of the proposed collective is **GRANTED**.

*28 U.S.C. § 1715*

The proposed settlement also meets the requirements set by the Class Action Fairness Act. *See* 28 U.S.C. § 1715. CAFA requires that each defendant participating in the proposed settlement serve specified documents upon "the appropriate federal and state officials within '10 days after a proposed settlement of a class action is filed in court[.]" *Ware*, 2020 WL 5087766, at * 2 (citing § 1715(b). Here, the parties properly demonstrate compliance with § 1715(b). *See* DE 133 at 6 (citing DE 131-1 (Sample CAFA Notice)). "Further, '[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).'" *Ware*, 2020 WL 5087766, at *2 (quoting 28 §§ 1715(b),(d)). Here, the CAFA notice went out on April 9, 2021. DE 131-1 at 2. Accordingly, the present Order is not premature.

*Final Certification of the Rule 23 Class*

The parties also jointly seek final certification of the Rule 23 class. DE 133 at 8. "Federal Rule of Civil Procedure 23(e) requires parties to obtain court approval of class-action settlements." *Doe 1-2 v. Deja Vu Servs., Inc.*, No. 2:16-CV-10877, 2017 WL 2629101, at *1 (E.D. Mich. June 19, 2017), *aff'd sub nom. Deja Vu Servs., Inc.*, 925 F.3d 886. Class certification requires that the class satisfy Rule 23's requirements. *See Ware*, 2020 WL 5087766, at *2. To ensure those requirements are met, "[a]pproval is a three-step process: '(1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the

6

decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable.'" *Deja Vu Servs., Inc.*, 2017 WL 2629101, at *1 (quoting *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001)).[3] The Court earlier conditionally certified the class. *See Davis*, 2021 WL 1214501, at * 15. Accordingly, the Court proceeds to whether final certification is merited under Rule 23(a) and (b)(3).

### a. Notice

Final approval requires notice, "to any class member who would be bound by a settlement." *Ware*, 2020 WL 5087766, at *2 (citing Fed. R. Civ. P. 23(e)(1)). "[D]ue process requires that notice to the class be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Deja Vu Servs., Inc.*, 925 F.3d at 900 (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013)). The notice must also inform class members of "the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member can enter an appearance through their attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)." *Ware*, 2020 WL 5087766, at *2 (quoting Fed. R. Civ. P. 23(c)).

Here, Defendants provided Rust Consulting with names and contact information for 204 potential class members. DE 133-1 at 4 ¶ 10 (Pavlik Decl.). Prior to the initial mailing, Rust Consulting confirmed and, when needed updated, Class Members' mailing addresses with the U.S.

---

[3] At the preliminary approval stage, the Court also discussed the factors that make this class's definition "sufficiently definite." *See Davis*, 2021 WL 1214501, at *4 (quoting *Ware*, 2020 WL 2441415) (internal quotations omitted). The Court stands by that undisturbed finding.

7

Postal Service's National Change of Address Database (NCOA). *Id.* at ¶12. Rust then sent Class Notices via First Class mail to 183 Class Members and sent notice via email to 31 Class Members. *Id.* at 4-5 ¶¶ 13-15. As a result, as of August 2021, only 21 potential class members (roughly 10% of the Class) received neither a Class Notice nor email Notice. *Id.* at 5 ¶15. Rust also arranged for newspaper ads to run in three local papers, and for a reminder postcard to go to Class Members who did not respond to the initial mailing. DE 133-1 at 5 ¶19. Due process does not require "heroic efforts[.]" *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 285 (6th Cir. 2005). Instead, the parties need only make an effort "reasonably calculated to apprise a party of the pendency of the action." *Id.* (internal quotations omitted). Here, Rust's efforts satisfy that standard. The case dynamics made address verification a challenge. Rust diligently endeavored to serve every potential claimant effectively.

The notice also complied fully with Rule 23(c). *See* 133-1 at 12–13 (informing class members on the nature of the action (*id.* at 12, 13 ¶ 2); the definition of the class certified (*id.* at 12); the class claims, issues, or defenses (*id.* at 12–13); the right for Class Members to retain their own counsel (*id.* at 13 ¶ 3); the right to object and to opt-out and the mechanics for doing so (*id.* at 15-16 ¶¶ 8, 9); and the binding effect of judgment on class members (*id.* at 15 ¶ 7, 9)); *see also id.* at 18 (legal notice); 20 (email); 22–32 (newspaper notices); 32 (reminder post-card); 37–38 (hearing reminder). Class members were notified that participation would release their state, local, and federal law claims against Defendants arising from putative violations of state or federal labor laws for the defined period. *Id.* at 15 (also noting that non-responding parties would not release their state law claims).In short, the notice "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement so that [they could] come to their own conclusions about whether the settlement serves their interests." *Vassalle*, 708 F.3d at 759 (quoting *Int'l Union,*

8

*United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (internal quotations omitted).

### b. Rule 23(a)

The Court, on this second review, incorporates the reasoning articulated in the preliminary certification Order and again finds that the proposed Class meets the requirements of Rule 23(a). *See Davis*, 2021 WL 1214501, at *5 (discussing this class and Rule 23(a)). A two-hundred-person class is sufficiently numerous, and joinder would be impractical. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996). Commonality is satisfied as well. *See Davis*, 2021 WL 1214501, at *5 (noting that Class Members' claims "share the same central and foundational liability contention" and will either succeed or fail together). So too is typicality. *See id.* (noting that all "claims share the same scope, source, and legal theory"). Finally, the representative party will fairly and adequately protect the interests of the class. *See id.* (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083). Davis, pursuing compensation for the harm of the alleged underpayment for work performed for Defendants, has "common interests with unnamed members of the class[.]" *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083. And, as the record demonstrates, Davis has "vigorously prosecute[d] the interests of the class through qualified counsel." *Id.* (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Accordingly, final approval is merited under Rule 23(a).

### c. Rule 23(b)

The Court, again incorporating the reasoning in its prior preliminary certification Order, also finds that the parties satisfy the necessary Rule 23(b) requirements for final certification. *See Davis*, 2021 WL 1214501, at *6. Here, the parties specifically seek final certification under Fed. R. Civ. P. 23(b)(3). DE 133 at 8-9. Rule 23(b)(3) requires:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see also Elliott v. LVNV Funding, LLC*, No. 3:16-CV-00675-RGJ, 2019 WL 4007219, at *5 (W.D. Ky. Aug. 23, 2019) (discussing the requirements of 23(b)(3)). As previously stated, common questions of law and fact predominate over individual ones, the same generalized proof is likely to address each class member's claim, and a class action is the best way, in light of all factors, to resolve the present dispute. *See Davis*, 2021 WL 1214501, at *6. Further weighing in favor is the substantial investment made thus far in discovery and settlement negotiations. Given the financial stakes and litigation burdens, the clear balance of the cost-benefit for Class Members lies in favor of taking the proposed payout instead of controlling and engaging in individual litigation.

*The Settlement Fund*

Having finally certified the Rule 23 class and FLSA collective, the Court turns to final approval of the settlement agreement, relative to the presented claims, itself.

> In doing so, the undersigned must determine: (1) whether the FLSA settlement is "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-cv-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)); and (2) whether the Rule 23 settlement is fair, reasonable, and adequate, Fed. R. Civ. P. 23(e).

*Ware*, 2020 WL 5087766, at *5.

a. Bona Fide Dispute

First, this the settlement resolves a *bona fide* dispute. *See Ware*, 2020 WL 2441415, at *11 (citing *Déjà Vu Servs.*, 925 F.3d at 894-99). Davis alleged that he and his fellow Class Members were entitled to compensation as Defendants' employees, Defendants disagreed. *See* DE 1 (Complaint); DE 4 (Answer). More than two years of litigation followed. *See, e.g.*, DE 51 (Motion for Conditional Certification); DE 55 (Response in Opposition). As previously stated, that standard is clearly met here. *See Davis*, 2021 WL 1214501, at * 8 (noting the significant resources poured into this actively disputed litigation over a period of more than two-and-a-half years between complaint and settlement). The hard-fought case presented multiple contested matters critical to both sides—the dispute was *bona fide*.

b. The UAW Factors

The settlement is also fair, reasonable, and adequate as measured by the seven *UAW* factors:

> (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest."

*Deja Vu Servs., Inc.*, 925 F.3d at 894–95 (quoting *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 497 F.3d at 631); *see also id.* at 894 (explaining that the *UAW* test determines whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e)). The most important factor is likelihood of success on the merits. *Id.*

The Court again incorporates its prior reasoning in finding that the proposed settlement agreement is fair, adequate, and reasonable. The proposed settlement agreement comes after years of contested litigation and with the aid of an experienced mediator—thus, there is no risk of fraud

11

or collusion. *See* DE 133 at 14. The dispute, involving state and federal claims of roughly two-hundred people, is complex, and the parties poured substantial resources into discovery and motion practice over the past three years. Because a wide range of validly disputable issues existed regarding material questions about employee designation and Class Members' roles, the Class Members' likelihood of success on the merits is loaded with doubt. Against the risks and costs of continued litigation, this proposed agreement offers Class Members an average settlement award of more than $4,600. DE 133 at 20. More than one quarter of the class will receive more than $1,000. The arms' length deal is proper under all metrics.

Class counsel and Davis support the settlement as well. *See* DE 133 at 1; DE 133-2 at 4 ¶ 5 (Goodwin Decl.); DE 133-3 at 2 ¶2 (Lichten Decl.). Davis attended the final hearing and expressed his approval of the deal. Finally, now informed by the completion of the notice period and the final approval hearing, the Court notes the following factors that further weigh in favor of approval. Notices went out via mail and email to roughly 90% of the Class Members. *See* DE 133-1 at 5 ¶ 15 (Pavlik Decl.). Not counting class members with only minimum claims (of $100), 55% of Class Members filed Claims Forms as of deadline. There were [0] objectors or opt-outs. Despite extensive notice, no one appeared to complain or contest the resolution at the final hearing. This level of support from the Class Members signals the need for approval. *See Deja Vu Servs., Inc.*, 925 F.3d at 899 (discussing the fifth and sixth UAW factors). Finally, approval also promotes the public interest. *See Davis*, 2021 WL 1214501, at * 10-11 (noting the clear benefits of approving this "hard-won agreement" and the absence of factors that would call for rejection of a proposed agreement).

c. <u>Additional Rule 23(e) Factors</u>

Rule 23(e)(2) provides its own supplemental factors used to evaluate a settlement agreement's fairness, reasonableness, and adequacy. *Ware*, 2020 WL 2441415, at * 15. Several of those factors have already been discussed; the Court will not repeat those again now (*e.g.*, adequacy of class counsel and the class representative's representation; existence of arm's length negotiations). *See Davis*, 2021 WL 1214501, at *11.

However, the following (e)(2) factors have not previously been discussed and therefore now merit individual consideration. The first is (e)(2)(C), which considers the adequacy of the relief provided for the class, taking into account:

> **(i)** the costs, risks, and delay of trial and appeal;
> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
> **(iv)** any agreement required to be identified under Rule 23(e)(3); and

As previously stated, "[r]elevant to (i) and (ii), respectively, the costs of continued litigation here are high and delay for trial would be considerable (particularly given ripples from COVID-19) and the joint settlement agreement proposes a comprehensive scheme to identify [claimants] and provide class members with their checks." *Davis*, 2021 WL 1214501, at *11. As to (iii), for the reasons stated more fully below (and in the prior Order), the terms of the award are reasonable. *See id.* (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) and *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Class Members will receive a meaningful payout that they otherwise might not have, the putative hourly rate is reasonable; counsel were working on a contingency fee basis; the compensation here will benefit society by encouraging other lawyers to take action on alleged violations of state and federal labor laws; as previously discussed, the litigation is complex; and, as shown by the record, counsel for both sides

acted with high levels of professional, skill, and competence in pursuing this matter, first at the adversarial stage, and now through settlement negotiations. *See Bowling*, 102 F.3d at 777. Accordingly, the settlement agreement is **APPROVED**.[4]

### d. Attorney's Fees & Costs

Plaintiff's counsel seeks $333,333.33 in attorneys' fees—equal to one-third of the Gross Settlement Amount—and, separately, $59,500 in reimbursement for half of their litigation costs (which they estimate as $119,000). DE 133 at 24, 27; DE 133-1 at 3 ¶ 5. "[A]ttorney's fees and costs are mandatory under the FLSA." *Ware*, 2020 WL 5087766, at * 7. Under Rule 23, the Court may "award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). For a dispute with an FLSA collective and a Rule 23 class, "the ultimate amount [awarded] 'is within the discretion of the judge and must be reasonable.'" *Ware*, 2020 WL 5087766, at *7 (quoting *Déjà Vu Servs.*, 925 F.3d at 898).

In awarding attorneys' fees, a court must ensure "that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings*, 9 F.3d at 516. "These two measures of the fairness of an attorney's award—work done and results achieved—can be in tension with each other. The lodestar method of calculating fees better accounts for the amount of work done, whereas the percentage of the fund method more accurately reflects the results achieved." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings*, 9 F.3d at 516) (internal quotations omitted).

"[T]o employ the percentage of the fund method, the court determines a percentage of the settlement to award to class counsel." *Id.* at 279. In complex class actions like this one, the "typical ratio" of fee awards is roughly 30% of the common fund. *See Déjà vu. Servs., Inc.*, 2017 WL

---

[4] Under (e)(2)(D), the intra-class treatment, metered to objective criteria, is equitable.

2629101, at * 9; *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at * 5 (S.D. Ohio July 11, 2014) (approving a fee award of 33% of a $1,320,000 settlement fund). The present proposed award falls at the upper end of, but within, that typical and recognized metric. Accordingly, this analysis supports the request. However, for added benefit, the Court also checks the award using the lodestar method. "To determine the lodestar figure, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Gascho*, 822 F.3d at 279 (citing *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir. 1995)). Here, as previously noted, "the award treated as an hourly measure, based on the factors presented (award divided by hours), would be a modest $150 per hour." *Davis*, 2021 WL 1214501, at *12. A true lodestar measure here, based on the experience and qualifications of counsel, would far exceed the percentage-based figure. "Without the settlement negotiated by Plaintiffs, the vast majority of class members would recover nothing." *Deja Vu Servs., Inc.*, 2017 WL 2629101, at *11. Accordingly, and in light of the full record, the amount of work performed on a contingency basis, and the benefit now delivered to Class Members, the fee award is reasonable. The Court endorses the fee.

Plaintiff's counsel separately seek roughly $59,500 as partial reimbursement for litigation costs. *See* DE 133 at 24-25. The request was earlier approved "as a preliminary matter." *Davis*, 2021 WL 1214501, at *12. In granting preliminary approval, the Court noted that, although final approval was contingent in part on the "precise and documented components" offered in support of the request, "[n]ot approving the stipulated expense amount would erode the attorney fee value in a way that would not reflect the proper balance of risk, reward, and class benefit, relative to counsels' role, in this context." *Id.* Plaintiff's counsel now properly support their request for cost-reimbursement. *See* DE 133 at 24-25 (citing DE 133-2 at 5 ¶ 8 (Goodwin Decl.); DE 133-3 at 1 ¶

15

4 (Lichten Decl.). Notably, the cost reimbursement request reflects expenses shown to be central to the theory for and proof of recovery, largely accounted for by the payment to Plaintiff's expert Compass Lexecon. DE 133-2 at 5 ¶ 8 (Goodwin Decl.). On review, the Court approves this reasonable cost request in the amount documented by the lawyer declarations.

The Court also approves the payment scheme as to claims administration expenses, which are being split in this matter 50/50 between Plaintiffs and Defendants. The documented administrative expenses, as supported in the Pavlik Declaration are reasonable and properly payable, per the Settlement Agreement mechanics.

###### e. Service Awards

For the reasons already stated, the proposed $5,000 service award for Davis is appropriate. *Davis*, 2021 WL 1214501, at * 13 ("Davis has been a party to this dispute for more than two-and-a-half years. All class members stand to benefit from this suit and may not have received anything if Davis had not taken this initiative and endured the lengthy pre-settlement litigation. In putting his name forward, Davis also arguably put his future employment opportunities and his perception as an employee in the marketplace at risk."); *see also Ware*, 2020 WL 2441415, at * 17 (collecting cases discussing service award considerations).

###### f. Cy Pres Beneficiary

Finally, the parties designate Kentucky Legal Aid as *cy pres* beneficiary. DE 133 at 6; 127 at 7; 127-1 at 12. As stated, the payment will come from checks to class members that lapse and remain uncashed—unless the class member requests a new check. DE 127-1 at 12. Class Members were notified of the arrangement (*see* DE 133-1 at 14). The *cy pres* arrangement is reasonable.

IV. **Conclusion**

For the foregoing reasons, and per the justifications offered in the joint motion, the Court ORDERS:

1. The DE 133 joint motion is **GRANTED**;

2. The settlement agreement is finally **APPROVED**;

3. The provisionally certified Kentucky class is now finally certified pursuant to Federal Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, for purposes of settlement;

4. The conditionally certified FLSA collective is now finally certified pursuant to 29 U.S.C. § 216(b), for purposes of settlement;

5. The attorney fees, costs and expenses, claims administration expenses, and service award provided for in the proposed agreement are **APPROVED** per the terms of the Settlement Agreement and the substantiating documentation;

6. The cy pres beneficiary is **APPROVED**; and

7. The Court will enter Judgment dismissing Plaintiff's complaint, and all claims therein, with prejudice, per the terms, scope, and dictates of the Settlement Agreement (though the Court will retain jurisdiction for purposes of enforcing the Agreement's terms).

This the 14th day of September, 2021.



Signed By:
*Robert E. Wier*
United States District Judge

17